Lora E. LOGE and Roger S. Loge,
Plaintiffs/Appellants,

v.

UNITED STATES of America and un-
known employees of the Department of
Health, Education, and Welfare, Defend-
ants/Appellees.

No. 80–1886.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1981.

Decided Nov. 6, 1981.

Walter S. Kyle, Fort Lauderdale, Fla., for plaintiffs/appellants.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Larry R. McCord, U. S. Atty., Fort Smith, Ark., Robert Greenspan, Katherine Gruenheck, argued, Attys., Civ. Div., Dept. of Justice, Washington, D. C., for defendants/appellees.

Before ROSS and ARNOLD, Circuit Judges, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

Lora Loge contracted paralytic polio after her infant son was inoculated with a trivalent, live, oral poliovirus vaccine trade named Orimune. She and her husband sued the United States and unknown em-

* The Honorable William C. Hanson, Senior District Judge, Northern and Southern Districts of Iowa, sitting by designation.

ployees of the Department of Health, Education, and Welfare[1] (HEW) under the Federal Tort Claims Act[2] (FTCA) and the Constitution alleging liability based on negligent and willful acts and omissions committed in the regulating, testing, and licensing of Orimune. The government moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. F.R.Civ.P. 12(b)(1) and (6). The district court[3], 494 F.Supp. 883, dismissed the complaint "for failure to state a cause of action" (R. 83), and the Loges appeal. We affirm in part and reverse in part.

## I.

█ In testing the sufficiency of the Loges' amended complaint, the district court was constrained to accept all material allegations as true and to construe them liberally in favor of plaintiffs. *Park View Heights Corp. v. City of Black Jack, et al.*, 467 F.2d 1208, 1212 n.3 (8th Cir. 1972). Only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" should the complaint be dismissed. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The material allegations in this case indicate the following.

In June 1963, the Secretary of HEW licensed Lederle Laboratories to manufacture Orimune—a trivalent, live, oral poliovirus vaccine. *See* 42 U.S.C. § 262(a); 21 C.F.R. § 630.10(a). Orimune is composed of all three Sabin strains of live poliovirus corresponding to the three different types of polio (known as Types 1, 2, and 3), thus the designation "trivalent." A characteristic of live Sabin polio vaccines such as Orimune is that not only is the vaccine's recipient immunized from polio, but unimmunized persons who come into close contact with the recipient also are immunized through a shed virus which spreads from the recipient to the "contact." Because Sabin strains contain the live polio virus, there is a risk that either a recipient or a contact could develop polio. Accordingly, the Secretary has promulgated regulations pertaining to the safety and potency of these strains which serve to protect susceptible persons from contracting the disease.[4] Drug manufacturers must prove their product's conformity to these regulations before the Secretary will issue a license to manufacture. 42 U.S.C. § 262(d).

A risk-free alternative to inoculation with the live Sabin vaccine is the Salk vaccine in which the virus is killed so that the recipient cannot contract polio nor can the recipient shed a live virus to unimmunized contacts. But the Secretary has promoted the use of risk-bearing live vaccines because they are able to effect total immunization of the public through transmission of the shed virus with less than total inoculation.

Mrs. Loge was exposed to the shed virus in 1976 after a doctor inoculated her infant son Todd with Orimune. Within one month after her son's inoculation, Mrs. Loge was stricken with a vaccine-associated case of poliomyelitis, Type 2. As a result, she is now a paraplegic. The Loges brought suit in the United States District Court for the Western District of Arkansas against the United States and unknown employees of the Department of HEW. The district court liberally construed their amended complaint to state the following claims against the United States under the FTCA based on the Secretary of HEW's negligence in:

(1) licensing all spread virus vaccines including Orimune, without requiring the manufacturer to produce the information required by 21 C.F.R. § 630.10(b)(2);

---

1. This department has since been redesignated the Department of Health and Human Services. 20 U.S.C. § 3508(a).

2. 28 U.S.C. §§ 1346(b), 2671 *et seq.*

3. The Honorable Paul X Williams, Chief Judge, United States District Court for the Western District of Arkansas.

4. 21 C.F.R. §§ 630.10–630.18. At the time of Lederle's licensing, these regulations were found at 42 C.F.R. §§ 73.110–73.118.

(2) licensing all live oral poliovirus vaccines without testing their safety for persons in close proximity to those inoculated, but who themselves have not received the vaccine;

(3) licensing all live oral poliomyelitis vaccines when the Secretary knew that the viruses reproduced within the inoculated person would not pass the safety requirements applicable to the viruses contained within the inoculant;

(4) licensing Types 1, 2, and 3 of the Sabin poliomyelitis live vaccine without establishing that it was free from harmful effect on individuals who had been determined to be particularly susceptible to the disease;

(5) licensing Orimune without issuing regulations designed to insure its continued safety;

(6) failing to apply the review procedures set forth in 21 C.F.R. § 601.25;

(7) failing to enact regulations which would assure the safety of trivalent oral polio vaccine as defined in 21 C.F.R. § 600.3(p);

(8) subjecting Mrs. Loge to shed virus inoculation without her knowledge or consent;

(9) failing to approve a stronger package insert warning about adverse reactions;

(10) failing to use due care in approving Lederle Lot No. 451–162—the vaccine lot from which Todd Loge received his inoculation—of the trivalent, live, oral polio vaccine.

R. 73–74.

Additionally the Loges pleaded that under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1973) and *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), they have a cause of action for damages directly under the Constitution for deprivation of Mrs. Loge's rights under the Fifth Amendment and her right of privacy. They claim that the government knowingly deprived Mrs. Loge of these rights in pursuing a national policy to vaccinate everyone against polio, including persons such as Mrs. Loge who did not voluntarily submit to the immunization program.

## II.

A. Before a cause of action against the United States can be stated, the hurdle of sovereign immunity must be overcome. This is the purpose of the FTCA.

> The Federal Tort Claims Act is not a federal remedial scheme at all, but a waiver of sovereign immunity that permits an injured claimant to recover damages against the United States where a private person "would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); see also 28 U.S.C. § 2674.

*Carlson v. Green, supra* at 28 n.1, 100 S.Ct. at 1477 n.1 (Powell, J. concurring). The district court construed the Loges' amended complaint to state several causes of action which failed to overcome this initial hurdle because they attacked acts or omissions by the Secretary of HEW that were "discretionary." The FTCA does not waive sovereign immunity for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Insofar as the Loges' amended complaint alleged that the government was negligent in promulgating or failing to promulgate regulations that would ensure the safety of live, oral poliovirus vaccines and properly protect susceptible persons such as Mrs. Loge, the district court correctly found that such actions by the government were discretionary functions and therefore immune from suit under FTCA. *Cf. Dalehite v. United States*, 346 U.S. 15, 27, 73 S.Ct. 956, 963, 97 L.Ed. 1427 (1953) ("It was not 'intended that the constitutionality of legislation, the legality of regulations, or the propriety of a discretionary administrative act, should be tested through the medium of a damage suit for tort.'").

On appeal the Loges challenge this finding in only one respect: the district court found that the regulations do not require the shed virus to be tested for safety, concluded that the Loges were essentially attacking the government for its failure to promulgate such regulations, and held that a non-actionable discretionary function was therefore implicated. The Loges claim that the regulations do require testing of the shed virus. They contend the shed virus is an "analogous product" to a virus; therefore it is within the definition of "biological products" [5] which are subject to licensing regulations. Title 21 C.F.R. § 600.-3(h)(5)(i) states that a product is analogous to a virus "*if prepared from or with a virus or agent* actually or potentially infectious, without regard to the degree of virulence or toxicogenicity of the specific strain used." (emphasis added). The "analogous product" obviously being referred to is a vaccine, which is prepared from a virus. Thus the live, oral polio vaccine is an analogous product to the Sabin viral strains because it is prepared from those strains. The same cannot be said for the shed virus. It is not a product analogous to a virus because it is not "prepared from or with a virus or agent;" it is itself a virus.

Nor is the shed virus, as the Loges further contend, a "recommended dosage" of a poliovirus strain. The regulations require that data must be submitted to the Commissioner of Food and Drugs "which establish that each such strain is free of harmful effect upon administration in the recommended dosage to at least 1 million people susceptible to poliomyelitis ..." 21 C.F.R. § 630.10(b)(2). The recommended dosage to which this regulation refers is the dosage of poliovirus strains "used in the manufacture of poliovirus vaccine." *See* 21 C.F.R. § 630.10(b)(2). The shed virus clearly is not a strain used in the manufacture of poliovirus vaccine. In short, the regulations are plainly designed to ensure the safety of live, oral poliovirus vaccine upon its direct recipients. No regulations require data showing the safety of the shed virus on contacts. To the extent that the Loges' amended complaint may be construed to state a claim attacking the government for this regulatory omission, the district court was correct in concluding that a discretionary function is implicated, thus immunizing the government from suit. Accordingly, we find no error in the district court's dismissal of this cause of action or any of the other causes of action to which the discretionary function exception was applied.

B. The district court did find that two causes of action under the FTCA were not barred by the discretionary function exception: the negligent failure of the government to require the mandatory tests of 21 C.F.R. § 630.10(b) [6] when Lederle was

---

5. " 'Biological product' means any virus, therapeutic serum, toxin, antitoxin, or analogous product applicable to the prevention, treatment, or cure of diseases or injuries of man." 21 C.F.R. § 600.3(h).

6. 21 C.F.R. § 630.10(b) *Criteria for acceptable seed virus.* (1) Strains of attenuated poliovirus Types 1, 2, and 3 used in the manufacture of the vaccine shall be identified by: (i) Historical records including origin and techniques of attenuation, (ii) antigenic properties, (iii) neurovirulence for monkeys, (iv) pathogenicity for other animals and tissue cultures of various cell types, and (v) established virus markers including rct/40,d, and other markers shown to be associated with strain virulence.

(2) Poliovirus strains shall not be used in the manufacture of Poliovirus Vaccine, Live, Oral, unless, (i) data are submitted to the Commissioner of Food and Drugs which establish that each such strain is free of harmful effect upon administration in the recommended dosage to at least 1 million people susceptible to poliomyelitis, under circumstances where adequate epidemiological surveillance of neurological illness has been maintained, and, (ii) each such strain produces a vaccine meeting the safety and potency requirements of §§ 630.11, 630.15, and 630.16(b). Susceptibility shall be demonstrated by §§ 630.11, 630.15, and 630.16(b). Susceptibility shall be demonstrated by blood tests, stool examinations and other appropriate methods.

(3) Each seed virus used in manufacture shall be demonstrated to be free of extraneous microbial agents except for unavoidable bacteriophage.

(4) No seed virus shall be used for the manufacture of poliovirus vaccine unless its neurovirulence in Macaca monkeys is no greater than that of the Reference Attenuated Poliovirus distributed by the Bureau of Bio-

licensed to manufacture Orimune in 1963 and the negligent failure to follow mandatory tests when Lederle's Lot 451–162 was approved. The Secretary has no discretion to disregard the mandatory regulatory commands pertaining to criteria a vaccine must meet before licensing its manufacture or releasing a particular lot of vaccine for distribution to the public. *See Griffin v. United States*, 500 F.2d 1059, 1063–69 (3d Cir. 1974).

Nevertheless the district court concluded that the Loges had still failed to state a claim under FTCA because no circumstances were alleged "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). This section has been construed to require that the entire law of the place where the act or omission occurred must be applied, including its choice of law principles. *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Without deciding which venue's law applied, the district court concluded that neither the law of the District of Columbia—the place of the negligent acts and omissions—nor the law of Arkansas—the place of the harmful impact—imposes a duty of due care on a person for activity similar to the government's in this case. We find, however, that under the applicable choice of law principles, Arkansas law applies and further that a cause of action has been stated under the law of Arkansas.

The allegations in the complaint indicate that the negligent acts and omissions by the government occurred in the District of Columbia, thus, under *Richards, supra*, the District's choice of law principles apply. The District of Columbia applies an interest analysis under which we must identify the state policies underlying each law in conflict and decide which state's policy would be advanced by having its law applied to the facts at bar. *Gelley v. Astra Pharmaceutical Products, Inc.*, 610 F.2d 558, 561 (8th Cir. 1979), *quoting Semler v. Psychiatric Institute of Washington, D. C.*, 575 F.2d 922, 924 (D.C.Cir.1978); *see generally*, G. L. Milhollin, *The New Choice of Law in the District of Columbia*, 24 Cath.U.L.Rev. 448 (1975). The law of the District of Columbia as construed by the Eighth Circuit in *Gelley* prohibits recovery by an injured party against the government under the circumstances as alleged in this case. It therefore seems that the underlying policy is to protect the government/defendant from liability for negligence in regulating drug safety. The Arkansas courts have not addressed this issue, but the district court predicted they would apply principles set out in the Restatement (Second) of Torts

logics. The neurovirulence of the seed virus shall be demonstrated by the following tests to be performed by the manufacturer: (i) The test prescribed in § 630.16(b)(1) using seed virus as test material in place of monovalent virus pool material and (ii) the following comparative intramuscular neurovirulence test: Each of at least 10 monkeys shall be injected with a total of 5.0 ml. of the seed virus under test in one or more proximate locations of either a gluteus or gastrocnemius muscle. Similar injections shall be made in another group of 10 monkeys using the Reference Attenuated Poliovirus. Each monkey shall be injected intramuscularly with no less than 10 TCID of viral inoculum. All monkeys shall be observed for 17 to 21 days and a comparative evaluation shall be made of the evidence of neurovirulence of the virus under test and the Reference Attenuated Poliovirus, as prescribed in § 630.16(b)(1)(iii).

(5) Subsequent and identical neurovirulence tests shall be performed in monkeys whenever there is evidence of a change in the neurovirulence of the production virus, upon introduction of a new production seed lot, and as often as necessary otherwise to establish to the satisfaction of the Commissioner of Food and Drugs that the seed virus strains for vaccine manufacture have maintained their neurovirulence properties as set forth in § 630.16(b)(1)(iii).

(6) The Commissioner of Food and Drugs may, from time to time, prohibit the use of a specified strain whenever he finds it is practicable to use another strain of the same type which is potentially less pathogenic for man, and that it will produce a vaccine of greater safety and of at least equivalent potency.

This regulation's precursor, 42 C.F.R. § 73.-110(b), in effect when Lederle was licensed to manufacture Orimune, was virtually identical except that under subsection (2), the strain was required to be tested on 100,000 susceptible persons instead of 1 million such persons.

§ 324A (1971), which governs liability to third persons for the negligent performance of an undertaking.[7] In this case, presumably the government could be found liable under the theory that it failed to exercise reasonable care in undertaking to ensure the safety of live, oral poliovirus vaccine. The underlying policy goal of this tort rule would appear to be to compensate the injured.

Because the policies of the tort rules of the two jurisdictions conflict, we must determine whether Arkansas's interest in the application of its rule outweighs the countervailing interest of the District of Columbia. Key factors in making this determination include the place where the injury occurred, the place where the conduct causing the injury occurred, and the residence of the parties. *Gelley, supra,* at 561 n.4; *see* Restatement (Second) of Conflict of Laws § 145 (1971). Since plaintiffs are residents of Arkansas and the injury occurred in this state, we find applicable the Arkansas rule in favor of protecting its citizens from injuries under such circumstances as are alleged in this case.

We also find that the district court erred in concluding that despite the prevailing rule in Arkansas, the Loges failed to allege circumstances under which relief could be granted. The district court summarily concluded that under Restatement § 324A (*supra* n.7), "the government could not be said to have increased the risk which was inherent in the drug," the government undertook no duty owed by the drug manufacturer to the Loges, and Mrs. Loge could not be said to have relied on the government to ensure the vaccine met established safety and potency requirements. In making these determinations, the district court failed to give proper deference to the Log-

es' claims: "The question . . . is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1357 at 601 (1969) (footnotes omitted). Such deference is particularly important where, as here, the plaintiffs are first put on notice of the applicable rule of law in the district court's Memorandum Opinion ruling on the motion to dismiss. Construing the Loges' allegations in their favor, we find that claims have been stated under any one of the three alternative grounds for liability stated in Restatement § 324A. It can be said that the government increased the risk of harm to the Loges by licensing an allegedly untested product, Orimune, and by releasing to the public an allegedly untested or negligently tested lot of that vaccine: if either the product itself or a particular lot of that product failed to conform to standards established by the regulations, then proper testing or proof of testing would have revealed the nonconformity and the vaccine would never have been disseminated to Todd Loge. Likewise, it can be said that the government undertook a duty owed by the drug manufacturer to the Loges when it required that proof of the drug's safety be demonstrated to the government before releasing it to the public. Finally, the Loges alleged they relied on the government's use of due care in approving for release the particular vaccine lot that was eventually administered to Todd Loge. Therefore, the district court erred in concluding that the Loges had failed to state a claim under the law of Arkansas.

### III.

We turn now to the Loges' claims said to arise under the Constitution of the United

---

7.  § 324A. Liability to Third Person for Negligent Performance of Undertaking.

    One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

    (a) his failure to exercise reasonable care increases the risk of such harm, or
    (b) he has undertaken to perform a duty owed by the other to the third person, or
    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

States. The Loges seek redress under the authority of *Bivens v. Six Unknown Federal Narcotics Agents*,[8] *supra*, from various unknown government agents and employees. They alleged that through their policy decisions to promote the use of live, oral poliovirus vaccine over killed virus vaccine, government officials intentionally and recklessly sacrificed Mrs. Loge's good health for the benefit of the health and welfare of the public, constituting: (a) an uncompensated taking of her private property ("to wit, Mrs. Loge's body") for public use; (b) a deprivation of her life, liberty and property without due process of law; and (c) an invasion of her right of privacy. The district court held that these allegations failed to state a cause of action because "[t]he Constitution does not include a guarantee to be free from personal injury under the circumstances of this case."

Not even the most general clauses of the Constitution, such as the Due Process Clause of the Fifth Amendment, should be read as conferring upon the courts the right to superintend every action of government that may adversely affect some citizen. While we recognize our duty to condemn forthrightly any governmental action that contravenes the Constitution, we are also aware that this function must be kept within bounds. To find that the Loges' allegations state causes of action under the Constitution would be to overstep these bounds. We therefore affirm the district court's dismissal of these constitutional claims.

Accordingly, we affirm the district court's order of dismissal in all respects except for the dismissal of the Loges' two claims under the FTCA alleging the government's violation of its own regulations. As to these claims, we reverse and remand for further proceedings consistent with this opinion.

**8.** *Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right. Recently the Supreme

Court held that a *Bivens* action is available even though plaintiff's allegations could also support a suit filed under the FTCA. *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).