Clarence E. BENNETT, et al.,
Appellants,

v.

Kenneth BERG, et al., Appellees.

Dan R. SANDFORD, Jr., et al., Appellants,

v.

Kenneth BERG, et al., Appellees.

No. 81–1418.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1981 *.

Decided Aug. 11, 1982.

Rehearing and Rehearing En Banc Denied in Part and Granted in Part
Sept. 16, 1982.

---

* As indicated, this appeal was submitted November 10, 1981. However, it was held in abeyance pending decision in *United States v.*

*Bledsoe,* 674 F.2d 647 (8th Cir. 1982), and *United States v. Lemm,* 680 F.2d 1193 (8th Cir. 1982).

Robert Plotkin, Robert P. Schuwerk, Plotkin & Jacobs, Ltd., Chicago, Ill., Jim Tom Reid, Shockley, Reid & Koger, Kansas City, Mo., for appellants.

James M. Beck, Steven M. Leigh, Johnson, Lucas, Bush, Snapp & Burgess, Kansas City, Mo., for John Knox Village.

Baker & Botts, James G. Ulmer, Randall A. Hopkins, Donna C. Kline, Robert E. Goodman, Jr., Houston, Tex., Swanson, Midgley, Gangwere, Clarke & Kitchin, James H. McLarney, Kansas City, Mo., for the Prudential Ins. Com. of America, appellee.

John H. Altergott, Jr., Suzanne K. Loseke, Shughart, Thomson & Kilroy, P. C., Kansas City, Mo., for appellee G. Dennis Sullivan.

James Borthwick, Shirley W. Keeler, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for Snyder, Grant & Muehling.

Albert Thomson, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, Mo., for appellees Kenneth Berg, Jeanne Berg, Christian Services Intern., Inc., Evangelical Christian Social Services, Inc., Lee Felsburg, Nat. Village Church Center, Lottie Jones, Irma Waddell, Elson Herndon, Floyd Sauer, Chris Coates, Glenn Smead, Maude Walker, Paul Edwards, Harvey Arbonies, and Mike Swingle.

Before HENLEY ** and ARNOLD, Circuit Judges, and NICHOL,*** Senior District Judge.

HENLEY, Senior Circuit Judge.

This appeal arises upon the district court's granting of defendants' motion to

** Judge Henley assumed senior status on June 1, 1982.

*** The Honorable Fred J. Nichol, Senior District Judge, District of South Dakota, sitting by designation.

dismiss for failure to state a claim. Fed.R. Civ.P. 12(b)(6). The case involves two consolidated complaints[1] in which plaintiffs-appellants seek, *inter alia*, treble damages and equitable relief under the civil remedies provisions of the title popularly known as RICO. Title IX of the Organized Crime Control Act of 1970, "Racketeer Influenced and Corrupt Organizations," Pub.L.No.91–452, §§ 901–904, 84 Stat. 922, 941–48, codified at 18 U.S.C. §§ 1961–68 (1976). Appellants' basic allegation is that their retirement community, known as John Knox Village, has been subject to financial mismanagement and self-dealing such that they are in danger of losing the "life care" which they were promised.

The district court held that appellants' complaint was subject to dismissal because it failed to allege the existence of an identifiable "enterprise" within the meaning of RICO, and because the equitable relief sought by appellants is not available to a private plaintiff. Federal jurisdiction was predicated entirely upon the RICO Act. Dismissal of the RICO counts therefore resulted in dismissal of pendent state claims.

We reverse in part and affirm in part the district court's dismissal.

## I. BACKGROUND.

Plaintiffs-appellants are present and former residents of the John Knox Village

retirement community in Lee's Summit, Missouri. The facility is owned and operated by a not-for-profit corporation of the same name organized under the general corporation law of Missouri.[2] The Village is exempt from federal taxation pursuant to 26 U.S.C. § 501(c)(4), and is exempt from Missouri state and local taxation by virtue of its not-for-profit status.

The residential community consists of approximately 2,500 residents who occupy units in the facility pursuant to Occupancy Agreement contracts. Under the terms of the occupancy agreements,[3] payment of an initial lump sum, or "Entrance Endowment," entitles a resident to occupy a specific apartment for life. Appellants allege[4] that the endowment fee paid by various plaintiffs ranged in amount from $9,000.00 to more than $50,000.00.

In addition to the entrance endowment, the occupancy agreements call for the payment of a "monthly lodging and/or service charge . . . in such amounts as determined by the Board of Directors of the Village." The agreements state that "the Village proposes to provide" some fifty-one services and facilities out of the monthly charges, including tray and diet service, building and grounds maintenance, scheduled transportation service, laundry service and various medical services.

1. The complaints are identical except for the named plaintiffs.

2. Hereinafter, we refer to the incorporated entity which owns and operates the facility as "John Knox Village," "JKV" or "the Village." We distinguish the retirement facility and its residents as "the community" or "the facility."

3. Plaintiffs' complaints did not attach or incorporate by reference an occupancy agreement. An agreement, however, has been provided as an appendix to the brief on appeal of defendant-appellee Snyder, Grant and Muehlig. An agreement is also contained in the record on appeal as an attachment to defendants' memorandum in support of their motions to dismiss, submitted to the district court.

Consideration of the occupancy agreement as a matter outside the pleadings would ordinarily convert a Rule 12(b)(6) motion into a motion for summary judgment. *See* Fed.R.Civ.P. 12(b)(6) and 56; *Sherwood Medical Industries,*

*Inc. v. Deknatel, Inc.,* 512 F.2d 724, 725 n.2 (8th Cir. 1975). The district court, however, expressly noted that no motions for summary judgment were filed. All parties and the district court referred freely to the occupancy agreements, apparently assuming that such extra-pleading material could be utilized without automatic conversion of the Rule 12(b) motions into proceedings for summary judgment.

In these circumstances, the motions to dismiss in district court should probably have been converted into speaking motions for summary judgment. However, any error in not treating the motions as motions for summary judgment is harmless.

4. For purposes of reviewing the granting of a Rule 12(b)(6) motion to dismiss, we accept appellants' factual allegations as true. *Loge v. United States,* 662 F.2d 1268, 1270 (8th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982).

Appellants allege that the Village is on the verge of bankruptcy, that services have markedly deteriorated, and that they face the loss of the "life care" which they expected and would have received but for fraud both in the inducement of residents to live in the community and in the operation of the Village. Their complaints in eleven counts stated causes of action for common law fraud under state law; violation of Missouri's Merchandising Practices Act, Mo.Rev.Stat. §§ 407.010 *et seq.* (1978); breach of fiduciary duty; and RICO violations. Only the RICO counts are directly at issue in this appeal.

The complaints include two RICO counts. In Count I, all defendants except John Knox Village are charged with participation in a pattern of racketeering through numerous acts of mail fraud, and conspiracy to engage in such a course of conduct, in violation of RICO provisions codified at 18 U.S.C. §§ 1961(5), 1962(a), (b), (c), and (d). Count II incorporates the factual allegations of Count I against John Knox Village with a prayer for equitable relief in the form of reorganization of the Village.

The essence of the scheme alleged is that various defendants fraudulently promoted the retirement community with materially false statements as to the Village's financial soundness and the promise of affordable "life care." Defendants are further alleged to have breached their fiduciary duty in operating the Village through a pattern of self-dealing. Finally, various defendants, including the Village's mortgage lender and former accountants, are charged with conspiracy to conceal the fraudulent promotion and operation of the Village.

The named defendants are the not-for-profit corporation John Knox Village; the founder of the Village, Kenneth Berg (hereinafter "Berg"); various not-for-profit corporations allegedly controlled by Berg; the mortgage lender to the Village, Prudential Life Insurance Company of America (hereinafter "Prudential"); the Village's former accountants, Snyder, Grant & Muehling (hereinafter "SG&M"); two former attorneys employed by various defendants; and various officers and directors of the Village and other not-for-profit organizations named in the complaint.

On March 11, 1981 the district court entered an order granting various defendants' motions to dismiss, followed by an unpublished memorandum opinion, order and judgment dismissing the complaints in both actions. The court held that the complaints failed to allege an "enterprise" within the meaning of RICO, and that the relief sought in Count II, a reorganization of defendant John Knox Village pursuant to 18 U.S.C. § 1964(a), was not available to private plaintiffs under the RICO Act.

On appeal, appellees renew their contention that (1) appellants failed to allege such "injury to [their] business or property" as is cognizable under RICO, 18 U.S.C. § 1964(c); (2) appellants failed to allege a RICO "enterprise" separate from the "pattern of racketeering"; (3) appellants failed to allege a RICO "enterprise" separate from the "person" or persons who may be culpable under RICO; (4) appellants failed to allege a "pattern of racketeering activity"; (5) appellants failed to allege that defendants "invested" racketeering proceeds in an enterprise, "acquired an interest in" an enterprise through racketeering activity, or "associated with" an enterprise to conduct the enterprise's affairs through a pattern of racketeering; (6) appellants failed to allege that organized crime was involved in their injury; and (7) the equitable relief requested is not available to private plaintiffs.

This litany of grounds for affirmance includes a number of issues of first impression in the Circuit Courts of Appeals. In reversing, we stress that today's decision is rendered on the pleadings without the benefit of a full factual record. Moreover, we are bound by a stringent standard in reviewing a Rule 12(b)(6) dismissal. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). A

complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief [citations omitted]." *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982), *quoting Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979).

■ Pleadings should be construed to do substantial justice. Fed.R.Civ.P. 8(f). Specificity sufficient to supply fair notice of the nature of the action will withstand a motion under Rule 12(b)(6). *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974); 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1216 at 120–121 (1969).

We are uncertain whether the facts developed at trial will sustain a cause of action under RICO. We are compelled under these standards, however, to reverse in part the district court's dismissal.

## II. DISCUSSION.

### A. Standing.

Appellees JKV, Prudential, and SG&M argue as a preliminary matter that appellants failed to allege the kind of injury which supports standing to bring a civil RICO suit. RICO provides that a civil action for treble damages may be brought by "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

Appellants' complaints alleged several forms of monetary loss. Appellants' entrance endowment payments are alleged to be worth 10% of what appellants bargained for, due to appellees' alleged conversion to their own use of funds which were deposited in trust for "life care." Monthly service charges are also alleged to be higher than expected due to appellees' unlawful conduct.

Appellees respond that the complaints do not allege a RICO injury for two reasons. First, the complaints are said to assert no breach of contract. Thus they allegedly do not state any injury whatsoever. Alternatively, any injury stated in the complaints allegedly is not an "injury to property" recognizable under the RICO Act. RICO is said to require competitive injury.

■ We are not convinced. Even if breach of contract is not directly and clearly stated in the complaints, this is irrelevant. Appellants' basic contention is that the value of their occupancy agreements was misrepresented *ab initio*, and that appellees' conduct has further lessened the value of their contracts. The essence of this alleged injury is not so much that contractual terms have been breached, but that the value of the contracts is different than appellants were led to expect through extracontractual statements and promises. The allegation sounds as one of injury flowing from fraud rather than breach of contract. Appellants claim essentially to have been deprived of the benefit of their bargain.

Appellees' second argument is somewhat more troublesome. They contend that even if appellants have alleged an injury, they have not alleged an "injury to property" within the meaning of Section 1964(c). Section 1964(c) provides a private cause of action modelled on the antitrust laws. S.Rep.No.617, 91st Cong., 1st Sess., 80–82, 125, 160 (1969) (hereinafter cited as S.Rep. No.617); 115 Cong.Rec. 6993 (1969) (statement of Sen. Hruska); *id.* at 39,907 (statement of Sen. McClellan); 116 *id.* at 585 (1970) (synopsis of S. 30, 91st Cong., 1st Sess. (1969)); *id.* at 35,916 (statement of Rep. Celler); *id.* at 35,201 (statement of Rep. McCulloch); *id.* at 36,296 (statement of Sen. Dole). Appellees argue from this fact that the "injury to property" alleged under Section 1964(c) must be an injury to competitive or commercial interests.

This argument has found favor with some courts. *Van Schaick v. Church of Scientolo-*

*gy*, 535 F.Supp. 1125 (D.Mass.1982) (requiring commercial harm though not competitive injury); *North Barrington Development, Inc. v. Fanslow*, —— F.2d ——, No. 80–C–2644 (N.D.Ill. Oct. 9, 1980) (requiring competitive injury).

We acknowledge that RICO was intended in part to combat the threat posed by racketeer influences in the free market system. H.R.Rep.No.1549, 91st Cong., 2d Sess. 57, *reprinted in* [1970] U.S.Code Cong. & Ad. News 4007, 4033 (hereinafter cited as H.R. Rep.No.1549); S.Rep.No.617; *United States v. Turkette*, 452 U.S. 576, 591 & nn. 13, 14, 101 S.Ct. 2524, 2532 & nn. 13, 14, 69 L.Ed.2d 246 (1981) (and citations to legislative history therein). This does not mean, however, that RICO should be viewed as an extension of antitrust law in all respects. Different policies underlie the two bodies of law. To ruin an antitrust defendant, usually a legitimate businessman, would generally lessen competition and increase concentration in a particular industry. RICO, on the other hand, is concerned to "strik[e] . . . a mortal blow against the property interests of organized crime." 116 Cong.Rec. 602 (1970) (statement of Sen. Hruska). In a RICO context, there are few countervailing reasons to lessen the impact of RICO remedies by importing the limitations on standing which apply in antitrust law. In other words, although RICO borrowed the tools of antitrust law to combat organized criminal activity, we do not believe the RICO Act was limited to the antitrust goal of preventing interference with free trade. Congress did not see the objectives of RICO and the antitrust laws as coterminous. *See* S.Rep. No.617 at 81–82; 115 Cong.Rec. 6993 (statement of Sen. Hruska); *id.* at 9567 (statement of Sen. McClellan); 116 *id.* at 607 (1970) (statement of Sen. Byrd); *id.* at 35,-193 (statement of Rep. Poff).

We conclude that an allegation of commercial or competitive injury is not required by the RICO Act. *Prudential Lines, Inc. v. McKeon*, No. 80 Civ. 5853 (S.D.N.Y. April 21, 1982); *Landmark Savings & Loan v. Rhoades*, 527 F.Supp. 206, 208 (E.D.Mich. 1981); *Hellenic Lines, Ltd. v. O'Hearn*, 523 F.Supp. 244, 248 (S.D.N.Y.1981) (RICO does not countenance racketeering activity merely because it is done uniformly among competing concerns); *see also* Note, *Civil RICO: The Temptation and Impropriety of Judicial Restrictions*, 95 Harv.L.Rev. 1101, 1109–1114 (1982) (hereinafter cited as Note, *Civil RICO*); Blakey & Gettings, *Racketeer Influenced and Corrupt Organizations (RICO): Basic Concepts-Criminal and Civil Remedies*, 53 Temple L.Q. 1009, 1040–1043 (1980) (hereinafter cited as Blakey & Gettings, *Basic Concepts*); Seiling, *Standing Rules and the RICO Treble Damage Action*, 1 Materials on RICO 533–73 (R. Blakey ed. 1980); *but see* Comment, *Reading the "Enterprise" Element Back into RICO: Sections 1962 and 1964(c),"* 76 Northwestern L.Rev. 100, 125–26 (1981) (private damage suit under RICO may be brought only where there is competitive injury resulting from an "enterprise's" distinct involvement in the racketeering activity) (hereinafter cited as Comment, *Reading the "Enterprise" Element Back into RICO*).[5]

### B. *"Enterprise" Distinct From the "Pattern of Racketeering."*

Turning to the substantive elements of a RICO claim, appellees next contend that the complaints fail to allege the existence of an enterprise distinct from the alleged pattern of racketeering. This contention, and several others that follow, requires attention to

---

5. Appellees' final argument on the issue of standing involves causation. They contend that appellants have failed to allege injury "by reason of a violation of Section 1962," as is required by the facial terms of 18 U.S.C. § 1964(c).

This contention reiterates in new guise the argument that no "enterprise" is alleged in the complaints. Appellees essentially contend that any injury discoverable in the complaints is attributable only to individual acts of mail or wire fraud, rather than to a pattern of racketeering conducted through an enterprise. *Compare Landmark Savings & Loan v. Rhoades*, 527 F.Supp. 206, 208–09 (E.D.Mich.1981). We conclude to the contrary that Count I adequately alleges the conduct of the affairs of an enterprise through a pattern of racketeering. *See* Section B, *infra*.

the complex syntax of the RICO statute, which appellants have been all too inclined to ignore.

■■ The RICO Act makes it unlawful for any person to conduct the affairs of an "enterprise"[6] through a pattern of racketeering activity.[7] 18 U.S.C. § 1962(c).[8] Significantly, the statute forbids the predicate acts of racketeering only insofar as an "enterprise" is involved. By requiring proof of an "enterprise," RICO requires proof of a fact other than the facts required to prove the predicate acts of racketeering. *United States v. Anderson,* 626 F.2d 1358, 1367 (8th Cir. 1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981). RICO is not a recidivist statute with enhanced penalties for acts of racketeering that are elsewhere proscribed in the criminal code. *Id.* at 1368 n.17. "The . . . enterprise at all times remains a separate element which must be proved[.]" *United States v. Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528; *United States v. Anderson,* 626 F.2d 1538.

In the present case, the district court assumed that the enterprise alleged in the complaint, if any, is the corporate entity John Knox Village. The court noted that the complaint portrayed the Village as "pervasively fraudulent." In light of this fact, the court concluded that the Village was not alleged to have an existence apart from the acts of racketeering.

We disagree, although our finding of a RICO enterprise is circumscribed as to Count II for the reasons discussed in Section C.

■ The complaint alleges and appellees themselves stress that John Knox Village provides numerous legitimate services. As an entity providing such services, and as an incorporated body under the laws of the State of Missouri, the John Knox Village corporation has an ascertainable structure apart from any predicate acts of mail fraud. As we held in *Anderson* and as the Supreme Court noted in *Turkette,* an enterprise may be said to exist where such separateness from the acts of racketeering can be found. Discrete existence, rather than the legality or illegality of the enterprise's activities or goals, is the test. *United States v. Turkette,* 452 U.S. at 585, 101 S.Ct. at 2530; *United States v. Anderson,* 626 F.2d at 1372 ("[W]e do not rest our holding on the word 'legitimate' but rather on the need for a discrete economic association existing separately from the racketeering activity.").

■ An enterprise is particularly likely to be found where, as here, the enterprise alleged is a legal entity rather than an "associational enterprise."[9] Legal entities are garden-variety "enterprises" which generally pose no problem of separateness from the predicate acts. *E.g., United States v.*

---

6. An "enterprise" is defined by RICO to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.] 18 U.S.C. § 1961(4).

7. Under RICO, a pattern of racketeering activity requires
   at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.] 18 U.S.C. § 1961(5).

8. We refer to the substantive prohibitions of Section 1962(c). This is the statutory section under which appellants state their strongest claim. Appellants also allege violations of 18 U.S.C. § 1962(a) and (b). Because we conclude that appellants have stated a claim under

Section 1962(c), we do not reach the question whether claims may also be stated under subsections (a) and (b).

9. The RICO Act encompasses two kinds of enterprises: legal entities, and "associations in fact." *United States v. Turkette,* 452 U.S. 576, 581–82, 101 S.Ct. 2524, 2527–28, 69 L.Ed.2d 246 (1981). Where a legal entity is alleged as the RICO enterprise, this entity is likely to be clearly distinct from the acts of racketeering. *E.g., United States v. Bledsoe,* 674 F.2d 647, 660 (8th Cir. 1982) (co-op, as legal entity, would clearly qualify as enterprise); *United States v. Anderson,* 626 F.2d 1358, 1365 & n.10 (8th Cir. 1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981) (County would necessarily constitute an "enterprise" apart from acts of racketeering, but association in fact of county judges with another for purposes of fraud was more problematic).

*Swiderski,* 593 F.2d 1246 (D.C.Cir.1978), *cert. denied sub nom. McGowan v. United States* and *Swiderski v. United States,* 441 U.S. 933, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979) (legitimate restaurant serving as front for narcotics trafficking); *United States v. Brown,* 583 F.2d 659 (3d Cir. 1978), *cert. denied sub nom. Greenblatt v. United States,* 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979) (auto dealership); *United States v. Weatherspoon,* 581 F.2d 595 (7th Cir. 1978) (beauty college); *United States v. Forsythe,* 560 F.2d 1127 (3d Cir. 1977) (bail bond agency); *United States v. Parness,* 503 F.2d 430 (2d Cir. 1974), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975) (foreign hotel and gambling casino).

We conclude that John Knox Village appropriately is named as an enterprise in the complaints for purposes of stating a RICO claim. We do not presently decide whether the various not-for-profit corporations named in the complaint are also "enterprises" within RICO. We further do not decide whether Kenneth Berg, founder of the Village, or other individual defendants may be enterprises. *See* 18 U.S.C. § 1961(4) (enterprise includes "any individual"); *United States v. Elliott,* 571 F.2d 880, 898 n.18 (5th Cir.), *cert. denied sub nom. Delph v. United States,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 and *Hawkins v. United States,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed. 344 (1978); *United States v. Hawkins,* 516

F.Supp. 1204, 1206 (M.D.Ga.1981) (single individual may be an enterprise).[10]

*C.  "Enterprise" Distinct From the Culpable "Person."*

The RICO Act proscribes conduct in which one party, the "person" subject to the statute, acts upon an entity, the "enterprise," in such a manner that the enterprise's affairs are conducted through a pattern of racketeering.[11] Appellee Prudential separately argues that an "enterprise" was not alleged apart from the "person" who "associated with" an enterprise for purposes of racketeering. We agree as to Count II of the complaints.

Count II is marked by a realignment of the defendant parties. In Count I, appellants seek treble damage relief from all defendants except for John Knox Village, leaving the Village in the role of the "enterprise" affected by the other defendants' allegedly illegal acts. In Count II, equitable relief is sought from JKV. Accordingly, this count places the Village in the role of the "person" responsible for conducting the affairs of an enterprise through a pattern of racketeering activity. In this formulation, appellants may intend to place the residential community in the role of the RICO "enterprise." The residential community, so perceived, would arguably be an "association in fact" for purposes of RICO. 18 U.S.C. § 1961(4). This allegation, how-

---

**10.** In light of appellants' arguments on appeal that all of these entities are RICO enterprises, it may be appropriate for appellees to tender and the district court to consider a Rule 12(e) motion for more definite statement as to the enterprise element.

In the interest of aiding the district court and parties on remand, we offer the suggestion that any amended pleadings should reflect careful attention to the precise language of the RICO Act. Both Count I and Count II are now poorly pleaded. In each count, the defendants are accused of "engag[ing] in 'a pattern of racketeering activity'" in violation of the RICO Act. See paragraphs 82, 85. This statement, taken in isolation, simply accuses the defendants of engaging in the predicate crimes. This is not precisely what the RICO Act forbids. RICO forbids persons from *conducting the affairs of an enterprise* through a pattern of engaging in

the predicate crimes. 18 U.S.C. § 1962(c). *Compare United States v. Anderson,* 626 F.2d at 1362 (quoting indictment which alleged that defendants were persons *associated with a named enterprise* for purposes of conducting the enterprise's affairs through a pattern of racketeering).

We nevertheless reverse the dismissal of Count I because, elsewhere in that count, it is apparent that at least JKV is alleged to be an enterprise.

**11.** Section 1962(c) specifically makes it unlawful for

any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity[.] 18 U.S.C. § 1962(c).

ever, has not been clearly set forth. For this reason, we conclude that the RICO claim as stated in Count II against John Knox Village cannot stand. *Van Schaick v. Church of Scientology*, 535 F.Supp. 1125 (D.Mass.1982). *Compare United States v. Hartley,* ·678 F.2d 961 (11th Cir. 1982), reaching a somewhat different result in unique context in a criminal case.

We suggest that on remand appellants should be permitted to amend their complaint, if indeed they fairly may, so as to include some of what is now in Count II, but containing at least an appropriate "enterprise" allegation. Rule 15(a) declares that leave to amend "shall be freely given when justice so requires," and this mandate is to be heeded. *See generally* 3 J. Moore, *Moore's Federal Practice,* ¶¶ 15.08, 15.10 (1982); *Asay v. Hallmark Cards, Inc.,* 594 F.2d 692, 695–96 (8th Cir. 1979). The pleading rules have been interpreted in accord with the principle that the purpose of pleading is to facilitate a proper decision on the merits. *Id.* at 695.

### D. Pattern ·of Racketeering.

Appellees next contend that the complaints fail to allege a "pattern of racketeering." Although "multiple incidents" of mail and wire fraud are alleged, and although racketeering activity includes mail and wire fraud, 18 U.S.C. § 1961(1), the complaints are said to lack the specificity required for pleadings of fraud under Fed. R.Civ.P. 9(b). We find some merit in this argument.

Rule 9(b)[12] requires that "the circumstances constituting fraud ... be stated with particularity." "Circumstances" include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. *See generally* 2A J. Moore & J. Lucas, *Moore's Federal Practice,* ¶ 9.03 at 9–18—9–24 (1982).

■ The complaints state the time, place and content of only some of the defendants' alleged misrepresentations.[13] The location of other allegedly false statements is said to be a "pamphlet," "promotional material," or "a typical life-care contract."[14] These allegations are not sufficiently particular to satisfy Rule 9(b). The complaints also fail to attribute certain false statements to identified defendants. Instead "various other defendants"[15] are alleged to be responsible for the statements. These allegations utterly fail to apprise defendants of the claims against them and the acts relied upon as constituting the fraud charged. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1297 at 404 (1969); *Felton v. Walston & Co.,* 508 F.2d 577, 581 (2d Cir. 1974).

We hold that on remand allegations which fail in particularity, *see* nn. 14, 15, should be struck without prejudice. Insofar as some paragraphs contain allegations against both identified and unidentified defendants, these paragraphs may stand as to named defendants if, as to the named defendants, the paragraphs are otherwise specific in stating the time, place and content of the misrepresentations.

■ Appellees JKV and Prudential also argue that a pattern of racketeering has not been alleged because no allegations of wire or mail fraud are made. This argument ignores numerous allegations of particular false statements. *See* n.13, *supra.*

---

12. Fed.R.Civ.P. 9(b) provides:
   *Fraud, Mistake, Condition of the Mind.*
   In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

13. We refer to paragraphs 40, 42, 43.1, 43.2, 46, 67(a), 67(b)(c)(d), 68 and 70, which identify the time, place and contents of the alleged misrepresentations with particularity. Paragraphs 54, 57, 58, 59 and 60 are also sufficiently specific to state a claim of fraudulent concealment.

14. *See* paragraphs 38, 41, 43, 66(d).

15. *See* paragraphs 40, 44, 46, 47, 66(d), 67, 68.

Use of the mails and wire fraud is also alleged.[16]

In sum, we conclude that a pattern of racketeering was alleged, and that fraud was alleged with sufficient particularity except for the allegations identified in nn.14–15.

### E.  Involvement of Organized Crime.

Appellee SG&M finally contends that a RICO complaint will lie only where the involvement of organized crime is alleged. This argument has found some degree of support, *Waterman Steamship Corp. v. Avondale Shipyards, Inc.*, 527 F.Supp. 256, 260 (E.D.La.1981); *Adair v. Hunt International Resources Corp.*, 526 F.Supp. 736, 746–48 (N.D.Ill.1981); *Barr v. WUI/TAS, Inc.*, 66 F.R.D. 109, 113 (S.D.N.Y.1975), from courts which may have been swayed by Congress's evident concern with organized crime in the passage of RICO. *See United States v. Turkette*, 452 U.S. at 588–93 & nn. 11, 12, 13, 14, 101 S.Ct. at 2531–33 & nn. 11, 12, 13, 14 (and legislative history cited therein); H.R.Rep.No.1549, *reprinted in* [1970] U.S.Code Cong. & Ad.News 4007; S.Rep.No.617; *see also* Comment, *Organized Crime and the Infiltration of Legitimate Business: Civil Remedies for "Criminal Activity,"* 124 U.Pa.L.Rev. 192, 205 (1975).

We are convinced that the better reasoned approach is one which rejects any attempt to interpret RICO as creating a status offense aimed only at organized crime in any colloquial sense of that phrase. The legislative history of the Act suggests that RICO is aimed more broadly at organized criminal activity as well.  116 Cong. Rec. 35,344 (1970) (statement of Rep. Poff) (Organized crime "serve[s] simply as a shorthand method of referring to a large and varying group of individual criminal offenses committed in diverse circumstanc-

es."). In fact, a restriction of the statute's applicability to organized crime, defined as a specific group of individuals, appeared constitutionally suspect to the bill's sponsor. *Id.* at 35,204 (statement of Rep. Poff). When Representative Biaggi proposed an amendment that would have specifically criminalized membership in the Mafia or La Cosa Nostra, Representative Celler objected that such terms were "imprecise, uncertain and unclear" and that mere membership in an organization should not be punished. *Id.* at 35,343–44 (statement of Rep. Celler, *citing Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); *Scales v. United States*, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); *Lanzetta v. New Jersey*, 306 U.S. 451 (1939)).

We join an increasing number of courts and commentators in concluding that RICO suits are not limited to contexts in which a tie to organized crime is alleged. *United States v. Aleman*, 609 F.2d 298, 303–04 (7th Cir. 1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Campanale*, 518 F.2d 352, 363–64 (9th Cir. 1975), *cert. denied sub nom. Matthews v. United States*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *Hellenic Lines, Ltd. v. O'Hearn*, 523 F.Supp. at 247–48; *Engl v. Berg*, 511 F.Supp. 1146, 1155 (E.D.Pa.1981); *Parnes v. Heinhold Commodities*, 487 F.Supp. 645, 646 (N.D.Ill. 1980); *United States v. Gibson*, 486 F.Supp. 1230, 1240–41 (S.D.Ohio 1980); *United States v. Chovanec*, 467 F.Supp. 41, 44–45 (S.D.N.Y.1979); *United States v. Vignola*, 464 F.Supp. 1091, 1096 (E.D.Pa.), *aff'd,* 605 F.2d 1199 (3d Cir. 1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980); *United States v. Mandel*, 415 F.Supp. 997, 1018–19 (D.Md.1976); Note, *Civil RICO, supra*, 95 Harv.L.Rev. at 1106–1109; Comment, *Reading the "Enterprise" Element Back into RICO, supra*, 76 N.W.L. Rev. at 100–01 & n.4; Long, *Treble Damages for Violations of the Federal Securities*

---

**16.** Finally, appellees SG&M and Prudential argue that the complaint does not allege the element of a "RICO relationship" between themselves and an enterprise. In other words, these defendants allegedly did not invest racketeering proceeds in, acquire control of, or associate with an enterprise.  18 U.S.C. § 1962(a), (b), (c).

The contention is without merit. These defendants were the mortgage lender and accountant to the Village. They were "associated with" an enterprise.

*Laws: A Suggested Analysis and Application of the RICO Civil Cause of Action*, 85 Dick.L.Rev. 201, 242–43 (1981); Blakey & Gettings, *supra, Basic Concepts*, 53 Temple L.Q. at 1013 n.15; Comment, *Title IX of the Organized Crime Control Act of 1970: An Analysis of Issues Arising in its Interpretation*, 27 DePaul L.Rev. 89, 112 (1975).

We recognize that this conclusion may tend to extend the net of the RICO Act to situations which otherwise might find a remedy only in the state courts. In the present context, for example, appellants are able to avail themselves of a federal cause of action for treble damages under RICO where common law fraud is an alternative claim. However, at least some federalization of state claims was not unanticipated by Congress. As the Supreme Court noted in the context of a criminal prosecution:

> As the hearings and legislative debates reveal, Congress was well aware of the fear that RICO would "mov[e] large substantive areas formerly totally within the police power of the State into the Federal realm." 116 Cong.Rec. 35217 (remarks of Rep. Eckhardt). See also *id.*, at 35205 (remarks of Rep. Mikva); *id.*, at 35213 (comments of the American Civil Liberties Union); Hearings on Organized Crime Control before Subcommittee No. 5 of the House Committee on the Judiciary, 91st Cong., 2d Sess., 329, 370 (statement of Sheldon H. Eisen on behalf of the Association of the Bar of the City of New York). *In the face of these objections, Congress nonetheless proceeded to enact the measure, knowing that it would alter somewhat the role of the Federal Government in the war against organized crime and that the alteration would entail prosecutions involving acts of racketeering that are also crimes under state law.*

*United States v. Turkette*, 452 U.S. at 586–87, 101 S.Ct. at 2530–31 (emphasis added).

Insofar as the door of the federal courthouse is similarly opened by RICO in a civil context, we are cautioned by the Supreme Court that broad Congressional action should not be restricted by the courts in the name of federalism. *Id.* at 587, 101 S.Ct. at 2531. It is beyond our authority to restrict the reach of the statute. *Id.; see also* Note, *Civil RICO, supra*, 95 Harv.L. Rev. at 1118–21.

Moreover, in the specific context of this case, it cannot be said that we have opened the floodgates for federal adjudication of every common law fraud claim. RICO is directed only at situations involving an enterprise which engages in or affects interstate commerce. 18 U.S.C. § 1962.[17]

### F. Equitable Remedies.

Count II of appellants' complaints requested equitable relief against John Knox Village in the form of reorganization of the Village. Because we affirm the dismissal of Count II as that count now is drawn, we do not reach the difficult question whether, under such facts as may be developed in this case, this equitable relief is available to private plaintiffs pursuant to 18 U.S.C. § 1964 and, if not, whether such relief may be granted under the court's general equitable powers.

We sympathize with the district court's request for guidance on these matters. It would, however, be premature for us to decide these questions not only without a factual record, but also without a pleading which squarely places the issues before us. We note for the information of the parties and the district court such scholarship as we have discovered, without at this time endorsing or rejecting the opinions there expressed. *See generally* Blakey & Gettings, *Basic Concepts, supra*, 53 Temple L.Q. at 1014, 1038 nn. 132–33 (indicating equitable relief is available to the private plaintiff).

---

17. In oral argument, the view was expressed that if we recognized appellants' claim as a RICO action, any scheme to defraud executed through two mailings would create a civil RICO claim. This misstates the elements of a RICO offense. Under the facial terms of section 1962, a RICO claim can only be stated where the scheme to defraud involves an enterprise,

and where the enterprise is one which "is engaged in, or the activities of which affect" interstate commerce.

The district court here expressly declined to rule on the interstate commerce element of the complaints. The issue is not before us on appeal.

Because we reverse the dismissal of Count I, and because we suggest that a grant of leave to amend is appropriate as to some material now in Count II, we forego detailed discussion of appellants' allegation that they were wrongfully precluded from filing a curative amendment to their complaints.

The district court's dismissal of Count I and of pendent state claims is reversed. A number of allegations hereinabove identified (nn. 14, 15) are to be struck without prejudice for failure to plead fraud with particularity. The dismissal of Count II as drawn is affirmed, and the case is remanded to the district court for further proceedings in light of this opinion.