190, 193–94 (1983) and *Massachusetts Turnpike Authority v. Perini Corp.,* 349 Mass. 448, 208 N.E.2d 807, 813–14 (1965).

17. Under Missouri law, plain and unambiguous language in an insurance contract must be given its plain meaning. *Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620, 623 (8th Cir.1981).

 18. Clear and unambiguous limitations to liability of insurer should be enforced. *Missouri Terrazzo v. Iowa Nat. Mut. Ins.,* 566 F.Supp. 546, 553 (E.D.Mo. 1983), *aff'd,* 740 F.2d 647 (8th Cir.1984).

19. In insurance cases, doubt or ambiguity is to be construed against the insurer and in favor of insured, but this rule has a limit; a court must give effect to limitations and exclusions in the policy unless the words in the policy are ambiguous. *Associated Elec. v. Mut. Boiler & Machinery,* 492 F.Supp. 410, 412–13 (W.D.Mo.1980); *see City of Carter Lake v. Aetna Cas. and Sur.,* 604 F.2d 1052, 1055–56 (8th Cir.1979) and *Johnson v. United States Fire Ins. Co.,* 586 F.2d 1291, 1295 (8th Cir.1978).

20. The definition of "occurrence" in the Mission policy is clear and unambiguous.

 21. The firing of Egol does not fall under the definition of "occurrence" in the Mission policy because it was not unexpected and unintended. *See City of Carter Lake, supra* at 1058–59.

22. Because the firing was not an "occurrence" under the Mission policy, Mission was not required to defend Interco and is not required to reimburse Interco. *See Travelers Ins. Co. v. Cole,* 631 S.W.2d 661, 665 (Mo.Ct.App.1982); *Missouri Terrazzo, supra* at 554–55.

23. The fact that Mission offered to defend Interco after the settlement agreement was reached does not invoke liability because their offer to defend was made after the Egol firing case had ended and because Mission reserved its rights to deny liability. *See City of Carter Lake, supra* at 1060.

24. Accordingly, plaintiff is not entitled to the relief prayed for and judgment will be entered for the defendants, with costs taxed against the plaintiff.

Ellanor Ann **FONDREN**, Plaintiff,

v.

**R.D. SCHMIDT, R.D. Schmidt, Inc., Interplan, Inc., Interplan Leasing Corp., Research Analysis For Finances, S.A., Does I through 20, Corporations 1 through 20, Defendants.**

No. CV–R–83–43–ECR.

United States District Court,
D. Nevada.

Jan. 7, 1986.

Mark H. Gunderson, Reno, Nev., for plaintiff.

C. Nicholas Pereos, Reno, Nev., and Amram & Hahn, James J. Gross, Washington, D.C., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff has objected to the June 28, 1985, Report and Recommendation of U.S. Magistrate Phyllis Halsey Atkins, wherein the Magistrate recommends that Plaintiff's First Amended Complaint be dismissed in its entirety, without prejudice. The primary basis for the Magistrate's recommendation is that the pleading doesn't reasonably apprise each defendant (five are named) of the specific role each is alleged to have played in the transactions described in the federal question causes of action.

Those claims for relief are grounded in purported misrepresentations and fraud in connection with securities transactions, and are the bases for the exercise of jurisdiction by this Court. Fed.R.Civ.P. 9(b), which mandates that the circumstances constituting fraud be stated with particularity whenever fraud is averred in a pleading, has not been satisfied by Plaintiff in the estimation of Magistrate Atkins. The other causes of action (a total of eleven comprise the First Amended Complaint) involve claims for relief arising under state law, and require the invocation of pendent jurisdiction.

It is Plaintiff's position that she has alleged the time, place and identity of the parties and the nature of the fraud with the specificity demanded by Rule 9(b). Part of the problem has arisen because individual defendant R.D. Schmidt is a "controlling person" as to three of the corporate defendants, according to Plaintiff. Each time he acted or spoke fraudulently, he didn't necessarily specify on whose behalf he was acting or speaking.

The Magistrate also feels that Plaintiff has not complied with Fed.R.Civ.P. 8(e), which imposes on a pleader the duty to make her averments simple, concise and direct. In particular, Magistrate Atkins frowns on Plaintiff's practice of referring to allegations contained in subsequent causes of action within the First Amended Complaint. By way of example, the Magistrate notes that in the Seventh Cause of Action Plaintiff alleges "Defendants were retained for the purposes specified in this Complaint" and "Plaintiff, relying on the representations of Defendants as alleged in this Complaint." One must search through a 26-page pleading to try to ascertain exactly what purposes and representations Plaintiff is referring to. In addition, the Magistrate feels that Rule 8(e) has been violated by the failure of Plaintiff to attribute specific conduct to a specific defendant or defendants. Instead, the pleading sometimes alleges that "Defendants" breached or failed to exercise reasonable care or committed wrongful acts or falsely and fraudulently represented. Plaintiff's objection contends that she merely is requiring the defendants to read the First Amended Complaint in its entirety, as one complete document. In her opinion, the direction of Rule 8(f) that all pleadings shall be construed as to effect substantial justice supports her position on this issue.

Plaintiff further objects to the Magistrate's Report and Recommendation re her Eleventh Cause of Action, which is based on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. The holdings of a U.S. Supreme Court opinion handed down subsequent to the Magistrate's Report and Recommendation render her reasoning erroneous, Plaintiff argues. The case, *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), overrules Magistrate Atkins' belief that a civil RICO action cannot lie until the defendants have been convicted of a criminal predicate act and that a RICO complaint must allege that the defendants constitute an enterprise organized solely for criminal purposes. However, the Magistrate also found that Plaintiff's Eleventh Cause of Action should be dismissed because the averments concerning the defendants' predicate fraudulent acts do not meet the particularity requirements of Fed.R.Civ.P. 9(b).

*Discussion*

Each cause of action set forth in the First Amended Complaint incorporates by reference all the allegations made under the causes of action earlier pleaded in that document. Fed.R.Civ.P. 10(c) specifies that statements in a pleading may be adopted by reference in a different part of the same pleading. Virtually always an earlier statement is adopted by reference later in the pleading, but Rule 10(c) does not prohibit adoption of statements to be found later in the pleading.

The particularity required for averments of fraud by Rule 9(b) must be satisfied in the complaint itself. *Arroyo v. Wheat,* 591 F.Supp. 136, 138 (D.Nev.1984); *Hokama v. E.F. Hutton & Co., Inc.,* 566

F.Supp. 636, 646 (C.D.Cal.1983). On a motion to dismiss, such as is here involved, the complaint must be read as a whole. *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 562 (2nd Cir.1985). Thus, allegations made in state law claims for relief may be used to supply the particulars mandated by Rule 9(b) for causes of action relating to violations of federal securities laws. *Id.* at 561. The allegations that are pertinent to the federal question causes of action, as will be recounted immediately below, therefore are drawn from both the state law claims and the federal claims themselves. They shall be described in the order in which they are alleged in the First Amended Complaint.

Individual defendant R.D. Schmidt (Mr. Schmidt) is an officer, shareholder, director and "controlling person" of defendants R.D. Schmidt, Inc. (Schmidt Inc.), Interplan, Inc. (Interplan) and Interplan Leasing Corp. (ILC). Mr. Schmidt also was an aider, abettor and co-conspirator with all the other defendants named in the First Amended Complaint. Defendants Schmidt Inc., Interplan and ILC were "controlling persons" of each other named defendant, and aided, abetted and co-conspired with each other and all the other named defendants. Defendant Research Advisors for Finances, S.A. (RAFSA) knew or reasonably should have known of the acts of all the other defendants, as those acts are alleged in the pleading. Mr. Schmidt organized Interplan and Schmidt Corp. for the purpose of operating an investment advisory service. He is their principal officer, director and sole shareholder and is also their alter ego, in that he has been conducting, managing and controlling their affairs as his own business in disregard of their corporate entities.

In the Fall of 1979, at Incline Village, Nevada, Plaintiff entered into an oral agreement with Mr. Schmidt and Schmidt Inc., whereunder they were to prepare an estate plan, render investment advice and purchase and sell securities and commodities on Plaintiff's account, with the objectives of conserving and enhancing Plaintiff's assets and providing her with income commensurate with her lifestyle. Those two defendants did prepare an estate plan, but it was inadequate. Further, their investment advice violated the terms of the agreement.

Defendants Mr. Schmidt, Schmidt Inc. and Interplan have held themselves out to the public as skilled, trained and expert estate planners, investment advisors and securities and commodities brokers. In the Fall of 1979, however, defendant Interplan was unlicensed, although it engaged in the business of rendering investment advice and marketing and selling securities and commodities. To the date of the complaint, it still was not licensed as a security or commodity broker. Defendants Mr. Schmidt and Schmidt Inc. have not been licensed either as investment advisors or securities and commodities brokers, although they have been engaged in both businesses.

Defendants Mr. Schmidt, Schmidt Inc. and Interplan did not exercise reasonable care and skill in preparing an estate plan, rendering investment advice and purchasing and selling securities and commodities on Plaintiff's account. As a result, her estate has suffered diminution.

At the time said three defendants were employed by Plaintiff, she did not possess skill, training or expertise in the matters for which those defendants were retained. Plaintiff placed trust and confidence in the representations made by all three of those defendants that they were skilled, knowledgeable and licensed as to such matters. They also verbally represented that, through the use of sophisticated information gathering, information processing devices and international financial reporting contracts and information sources, they could forecast and predict with accuracy price changes of securities and commodities. As a result, they told Plaintiff, they could achieve large monetary gains for her with minimal risk. All of the aforesaid representations were false, and their falsity was known at the time to the defendants who made them. They failed to discharge

their responsibilities in a competent manner consistent with Plaintiff's best interests, to her damage. Said defendants' conduct was fraudulent, malicious and oppressive toward Plaintiff.

Between the Fall of 1979 and January 1, 1983, Plaintiff delivered substantial sums of money to defendants Mr. Schmidt, Schmidt Inc., Interplan and RAFSA for estate planning and investment purposes. During that period those four defendants purchased, sold and traded securities and commodities for Plaintiff's account. On January 1, 1983, Plaintiff withdrew her authorization for them to act on her behalf. She has demanded an accounting from them, but they have not rendered any.

During that time period, the same four defendants conspired and agreed among themselves to commit the wrongs specified in the First Amended Complaint. Their acts were in furtherance of the conspiracy. Plaintiff was damaged thereby.

Plaintiff opened a securities and commodities account with defendants Schmidt Inc. and Interplan, to be handled by Mr. Schmidt. By reason of the account, Schmidt Inc. and Interplan purchased and sold various securities and commodities and were to act as Plaintiff's broker and advisor. During the time the account was open, Schmidt Inc. and Interplan failed properly to supervise Mr. Schmidt. It was their duty to supervise him because they were control persons within the meaning of federal securities laws. The acts of said three defendants were covered by those laws and were accomplished through use of the mail and other instrumentalities of interstate commerce.

Prior to the Fall of 1979 Plaintiff had little knowledge of securities and commodities, and had not engaged in significant transactions concerning them. This lack of knowledge and experience was known by defendants Mr. Schmidt, Schmidt Inc. and Interplan. Mr. Schmidt represented himself to be an experienced representative for the purchase and sale of securities and commodities when, in fact, his experience in commodity transactions had been limit-

ed. Schmidt Inc. and Interplan failed properly to instruct Mr. Schmidt or supervise his transactions on behalf of their customers.

Mr. Schmidt showed Plaintiff charts and graphs which he said represented movements in the price of gold. They, together with Schmidt Inc.'s and Interplan's analyses of them, allowed the defendants to predict accurately in advance movement in the price of gold and gold-based investments, Mr. Schmidt said. This included the gold-based investments of defendant RAFSA. Mr. Schmidt also represented that substantial gains and tax savings could be achieved by purchasing and selling security instruments issued by First Western Government Securities, Inc. (FWGSI), utilizing similar methodology. Such information, combined with the expertise of the defendants, Mr. Schmidt said, would enable Plaintiff to achieve substantial profits if she allowed Schmidt Inc. and Interplan to make stock and commodity investments on her behalf. In reliance on Mr. Schmidt's claim of experience in trading such accounts and his promise to be "conservative," Plaintiff engaged in a series of securities and commodities transactions through Schmidt Inc. and Interplan between the Fall of 1979 and January 1, 1983.

Mr. Schmidt told Plaintiff it would be in her best interest to allow Schmidt Inc. and Interplan to have "discretionary authority" over her account. He represented that her profits would be greater if it were not necessary to check with her as to individual transactions. In reliance on those representations, Plaintiff granted the requested discretionary authority to Schmidt Inc. and Interplan. The true purpose for inducing Plaintiff to grant such authority was to enable Mr. Schmidt, Schmidt Inc. and Interplan to generate excessive and unreasonable commissions and fees.

Subsequently, Mr. Schmidt requested Plaintiff to place further sums in her account, to cover losses previously sustained. Further, he represented to her that all losses sustained would be completely tax deductible and, if she maintained the account,

it would become profitable. In reliance on the representations, Plaintiff invested further sums with Schmidt Inc. and Interplan. Mr. Schmidt, Schmidt Inc. and Interplan purchased gold debentures issued by RAFSA. Those debentures were and are "illusory." Through the purchase of the debentures, Mr. Schmidt, Schmidt Inc., Interplan and RAFSA earned a profit not disclosed to Plaintiff. This was in violation of contractual and fiduciary duties they owed Plaintiff. Further, RAFSA has conspired with the other said defendants. Their acts in furtherance of the conspiracy have prevented Plaintiff from liquidating, recovering or dealing with the gold debentures issued by RAFSA. Said defendants didn't advise Plaintiff that purchase agreements made without her authorization could be rejected by her. On the contrary, they all maintained that they were looking out for their clients' best interests, and that additional investment would make up the losses. In addition, they told Plaintiff that all necessary elements were present for an up-turn. The result has been that Schmidt Inc. and Interplan have wrongfully and knowledgeably attended to the purchase by Mr. Schmidt of contracts for Plaintiff's account on terms not specified by her. The purpose was to generate commissions and fees for Mr. Schmidt, Schmidt Inc. and Interplan, and to cover up the misappropriation of funds from Plaintiff's account.

All four said defendants recommended extremely risky transactions for Plaintiff's account, including investments in RAFSA and FWGSI securities and commodities. At the time they knew that Plaintiff was unaware of the extent of risk. Schmidt Inc. and Interplan failed properly to supervise Mr. Schmidt or to comply with requirements of the Exchanges and the National Association of Securities Dealers designed to protect customers without knowledge and experience in the purchase and sale of commodity contracts. Subsequent to these unlawful purchases, Mr. Schmidt, Schmidt Inc. and Interplan failed to advise Plaintiff that she could reject the purchases. Upon Plaintiff's request for advice, said three defendants said nothing could be done about the purchases. Defendants Mr. Schmidt, Schmidt Inc., Interplan and RAFSA concealed their wrongful acts, omissions and representations from Plaintiff. Their conduct was fraudulent, intentional and in reckless disregard of Plaintiff.

Between the Fall of 1979 and January 1, 1983, Mr. Schmidt, Schmidt Inc. and Interplan falsely and fraudulently represented that investments in debenture certificates issued by RAFSA and securities issued by FWGSI were superior in rate of return and security to the securities portfolio held by Plaintiff in the Fall of 1979. In reliance on those representations, Plaintiff sold substantial portions of her securities portfolio and transferred the proceeds to Mr. Schmidt, Schmidt Inc. and Interplan. They, in turn, used the money to make the above-described speculative investments for the purpose of defrauding Plaintiff.

The defendants, as aiders and abettors or as "controlling" or "controlled" persons used instruments of interstate commerce to defraud Plaintiff in violation of federal securities law. She, therefore, is entitled to and demands recission of her investments in RAFSA gold debentures and FWGSI securities. Those debentures and securities were unregistered, so that their sale violated federal securities law to Plaintiff's damage.

The conduct of the defendants also violated Nevada statutes aimed at preventing fraud or deceit in the offer, purchase or sale of securities, thus entitling Plaintiff to rescind her RAFSA and FWGSI investments.

All of the defendants violated RICO by using interstate mails, telephone and telegraph in connection with racketeering activities involving fraud. The five defendants, as a group, constituted an "enterprise" while engaged in a pattern of "racketeering activity" consisting of the sale of fraudulent, unregistered and worthless securities in violation of securities fraud, mail fraud and wire fraud statutes considered to be predicate acts under RICO. They conspired with each other to commit the fraud-

ulent and unlawful activities described in the First Amended Complaint.

■ This matter came before Magistrate Atkins, and is now before this Court, on the defendants' motion to dismiss. In appraising the legal sufficiency of a complaint, the allegations therein are to be construed favorably to the plaintiff. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978). The issue is not whether the plaintiff's success on the merits is likely but, rather, whether it appears beyond doubt that she could prove no set of facts that would entitle her to relief. *Id.* Rule 9(b)'s particularity requirement mandates only that the circumstances constituting fraud be identified to the extent that the defendants will find sufficient information in the allegations to be able to prepare an adequate answer. *Riley v. Brazeau*, 612 F.Supp. 674, 678 (D.Ore.1985); *Hokama v. E.F. Hutton & Co., Inc.*, 566 F.Supp. 636, 645 (C.D.Cal.1983). The purpose of the rule is to thwart charges of fraud from arising out of contractual relations that merely didn't work out like the parties had anticipated. *Arroyo v. Wheat*, 591 F.Supp. 136, 139 (D.Nev.1984). By requiring a plaintiff to investigate and ascertain the facts before he or she files suit, it serves to protect defendants from unfounded charges that would tend to injure their reputations. *Id.; In re Com. Oil/Tesoro Petroleum Corp. Sec. Lit.*, 467 F.Supp. 227, 250 (W.D.Tex.1979). While general conclusory allegations of fraud will not suffice, statements of the time, place and nature of the allegedly fraudulent activities will. *Bosse v. Crowell Collier and Mac-Millan*, 565 F.2d 602, 611 (9th Cir.1977). In cases involving multiple defendants, a plaintiff should specify the role of each defendant in the fraudulent activity. *Lewis v. Sporck*, 612 F.Supp. 1316, 1325 (N.D. Cal.1985); *Woods v. Reno Commodities, Inc.*, 600 F.Supp. 574, 579 (D.Nev.1984). Where a category of defendants is allegedly responsible for a continuing course of conduct, however, group conduct may be pleaded. *In re Equity Funding Corp. of Amer. Sec. Litigation*, 416 F.Supp. 161, 181 (C.D.Cal.1976). Plaintiff appears to have satisfied both principles. Her alter ego and controlling and controlled person allegations tend to support the propriety of pleading group conduct in this instance. Nevertheless, the great bulk of her averments specify which particular defendants she contends participated in specific fraudulent activity.

The contents of the purported misrepresentations and the identities of the parties who made them are stated in the First Amended Complaint. *See Riley v. Brazeau, supra* at 612 F.Supp. 677. *Riley* also teaches that the pleading should state whether a particular defendant is being sued as a principal or as an aider and abettor. *Id.* Plaintiff has done this. Defendants' purported claims that their expertise and special knowledge enabled them to predict whether prices of securities would rise has been held to meet the particularity standards of Rule 9(b). *Gottreich v. San Francisco Inv. Co.*, 552 F.2d 866, 866 (9th Cir.1977).

Policywise, Rule 9(b) should not be used as a tool to require a plaintiff to repeatedly redraft her complaint where the defendants do, in fact, have notice of the matters about which she complains. *In re Com. Oil/Tesoro Corp. Sec. Lit., supra* at 467 F.Supp. 251. Justice is better served by reaching the merits. *Michael v. Clark Equipment Co.*, 380 F.2d 351, 352 (2nd Cir.1967).

■ Plaintiff's pleading does state federal question claims upon which relief can be granted. For example, her Ninth Cause of Action alleges that the defendants practiced fraud and deceit upon her when selling to her unregistered securities of RAF-SA and FWGSI, in violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission. The U.S. Supreme Court has said that when there is a sale of a security and fraud "touches" the sale, there is redress under section 10(b). *Arrington v. Merrill Lynch, Pierce, Fenner & Smith*, 651 F.2d 615, 619 (9th Cir.1981); *see also Herman & MacLean v. Huddleston*, 459

U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983). When a broker engages in excessive trading, in disregard of his customer's investment objectives, for the purpose of generating commissions, the broker may be held liable for churning in violation of Rule 10b–5. *Mihara v. Dean Witter & Co., Inc.,* 619 F.2d 814, 820 (9th Cir.1980). Plaintiff has made such allegations in her First Amended Complaint. A broker may be held liable for making an expert's prediction when, in fact, he has no basis for claiming expertise or special knowledge. *Gottreich v. San Francisco Inv. Co., supra* at 552 F.2d 867. The pleading contains such averments.

 In her Eleventh Cause of Action, Plaintiff pleads violation of RICO, based on fraudulent use of interstate facilities and violations of security laws. If a defendant engages in a pattern of racketeering activity in a manner forbidden by the Act, and the plaintiff is injured in her property thereby, she has a claim under RICO. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* — U.S. ——, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). This is not to prejudge whether Plaintiff herein will be able to prove her claim. However, she has stated a claim for relief under RICO.

From the foregoing it can be seen that after *de novo* review, this Court rejects the Magistrate's recommendation that Plaintiff's First Amended Complaint be dismissed in its entirety. The allegations of the pleading sufficiently state claims based on federal questions. The claims for relief arising under state law properly should be considered by the Court at the same time in its exercise of pendent jurisdiction.

IT IS, THEREFORE, HEREBY ORDERED that the defendants' Motion to Dismiss or in the Alternative, Motion to Strike, filed September 11, 1984, be DENIED.

IT IS FURTHER ORDERED that the defendants who have been served with process shall have twenty (20) days from the date notice is given of this Order in which to respond to the plaintiff's First Amended Complaint.