Ivan **MEYER**, Plaintiff,

v.

The **FIRST NATIONAL BANK AND TRUST COMPANY OF DICKINSON**, a North Dakota banking corporation, and Peter Mesling, an individual, Defendants.

**Civ. No. A1–86–168.**

United States District Court,
D. North Dakota,
Southwestern Division.

March 23, 1987.

Lyle W. Kirmis, Bismarck N.D., for plaintiff.

William C. Kelsch, Mandan, N.D., David L. Peterson, Bismarck, N.D., for defendants.

## MEMORANDUM AND ORDER

CONMY, Chief Judge.

Plaintiff has filed a second amended complaint against defendants Mesling and First National Bank and Trust Company of Dickinson [the Bank], alleging violations of the Racketeer Influenced and Corrupt Organizations Act [RICO], 18 U.S.C. § 1961 *et seq.;* state RICO claims, N.D.Cent.Code § 12.1–06.1–01(2)(d); breach of contract, and fraud. Both Mesling and the Bank have moved this court to dismiss plaintiff's second amended complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

Plaintiff alleges that, on or about October 13, 1980, defendant Mesling approached him and informed him that the Bank was going to be examined, and that it had exceeded its loan limits on loans to Gary Martinson and G–M Enterprises, a corporation wholly owned by Martinson. Mesling allegedly asked plaintiff to execute a promissory note for $250,000 to buy off part of the loan as a favor to Mesling and the Bank, and promised that after the examination the Bank would reinstate Martinson's obligation and satisfy any obligation of the plaintiff showing on the Bank records.

After the examination, Mesling informed plaintiff that he was unable to complete the transfer at that time, but would do so shortly. Ultimately, Mesling refused to satisfy the note, and the Bank made demands upon plaintiff to pay the note. Mesling claimed that plaintiff was a debtor of the Bank, and allegedly falsified bank records to corroborate that claim.

Plaintiff executed several renewal notes with the Bank, ostensibly to protect his reputation, maintaining that the Bank was obligated to hold him harmless from any losses and to assume the entire liability for Martinson's debt.

In 1982, plaintiff entered into a settlement with Martinson whereby certain real property was transferred to plaintiff in exchange for any claims plaintiff might have against Martinson. Plaintiff alleges that the settlement was with the Bank's knowledge, approval and participation, and did not release or alter plaintiff's position as to the Bank.

Plaintiff seeks treble his compensatory damages of $366,860.35,[1] or $166,860.55;[2] punitive damages, attorney's fees and costs, and an order requiring the Bank to accept a quitclaim deed to the unsold Martinson real estate and to hold plaintiff harmless for any future expenses or claims that might arise from ownership of that real estate.

## I. MESLING'S MOTION TO DISMISS

Defendant Mesling alleges that plaintiff fails to state a claim under RICO, in that he inadequately alleges an "enterprise," a "pattern" of racketeering activity, an "effect" on interstate commerce, or an injury to business or property. Mesling also argues that plaintiff has failed to establish probable cause that racketeering acts were committed. Mesling argues that, since plaintiff's federal RICO claim fails, this court is without jurisdiction, and should dismiss plaintiff's pendent state claims. Alternatively, Mesling argues that plaintiff's suit is an attempt to enforce a legally unenforceable contract, and that plaintiff has failed to adequately state a claim sounding in fraud or breach of contract.

## SUFFICIENCY OF THE PLEADINGS— *Rule 9(b) Particularity*

Rule 8(a), Federal Rules of Civil Procedure, requires that a pleading set forth a claim for relief containing a short, concise, statement showing the pleader's entitlement to relief. Rule 8(f) provides that "[a]ll pleadings shall be construed as to do substantial justice." Fed.R.Civ.P. 8(f).

---

1. This amount represents $105,547.15 paid to the Bank pursuant to defendants' demands, $61,313.40 in taxes and other expenses on account of ownership of the Martinson real property, and $200,000 present liability on the note.

2. This amount represents the $105,547.15 paid to the Bank plus the $61,313.40 in taxes and other expenses.

Rule 8(f)'s rule of construction must be balanced with the mandates of Rule 9(b), Federal Rules of Civil Procedure, which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

There are three purposes served by Rule 9(b)'s requirement: (1) it protects potential defendants from harm to their reputations that results from being charged with the commission of acts involving moral turpitude, (2) it ensures that allegations of fraud are concrete and particularized enough to give notice to defendants of the conduct complained of and to prepare a defense to such claims of misconduct, and (3) it inhibits the filing of a complaint as a pretext for the discovery of unknown wrongs, and as an inducement to satisfactory settlement offers. *Stewart v. Fry*, 575 F.Supp. 753, 756 (E.D.Mo.1983); *Goldman v. Belden*, 98 F.R.D. 733, 735 (W.D.N.Y.1983).

The Eighth Circuit has indicated that where mail and wire fraud are alleged, the plaintiff must set out the time, place, and contents of the alleged false representations, as well as the identity of the person making those misrepresentations. *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982). *And see Krueger v. St. Joseph's Hosp.*, 305 N.W.2d 18, 24 (N.D.1981). This court has reviewed the complaint and finds that it adequately alleges these facts.

Mesling argues that plaintiff inadequately alleges a violation of section 1343, Title 18, United States Code,[3] since plaintiff fails to allege interstate communications as required by that statute.

Plaintiff's complaint alleges that defendants "(1) participated in a scheme to defraud; (2) used the United States wires and mail for the purpose of carrying out the scheme; and (3) did so with the intent to defraud the plaintiff," all in violation of 18 U.S.C. § 1343. Plaintiff's Second Amended Complaint par. XVII. Plaintiff's complaint also alleges that defendant Mesling contacted plaintiff by telephone and proposed the scheme whereby plaintiff was allegedly defrauded. Plaintiff's Second Amended Complaint par. V. Plaintiff has not alleged anywhere in his RICO claim that defendants used *interstate* communications or mails in furtherance of the scheme to defraud.

Plaintiff argues that he is not required to allege every detail of fraud in order to make out a claim under RICO. Plaintiff objects to having to specifically list "each and every interstate phone call and each and every letter alleged to be mail and wire fraud."

Interstate communication is an essential element of a claim under either section 1343 or 1341. *United States v. Cowart*, 595 F.2d 1023, 1031 n. 10 (5th Cir.1979) (to establish crime of wire fraud, party must show scheme, use of interstate communications, such as telephone, and criminal intent to defraud). Plaintiff's complaint does allege use of the United States mails and wires in furtherance of the scheme to defraud. This allegation is sufficient to pass procedural muster. *Cf. Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 790–91 (3rd Cir.1984) (complaint sufficiently alleged violation of §§ 1341 and 1343 even though failed to specify date, place or time of phone calls and letters allegedly used to further scheme); *Ross v. Omnibusch, Inc.*, 607 F.Supp. 835, 838 (D.Mich.1984) (complaint sufficiently alleges violation of §§ 1341, 1343 and 1962(c) where alleges that defendants employed U.S. Postal Service mail and communications by wire two or more times).

Mesling also argues that plaintiff's complaint fails to adequately allege intent to defraud. Rule 9(b) provides, however, that "[m]alice, intent, knowledge, and other con-

---

**3.** Section 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C.S. § 1343 (1979).

dition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Plaintiff's complaint adequately alleges the elements of fraud, including intent, which may be inferred from the circumstances alleged.

This court finds that the complaint sufficiently puts defendants on notice of the claims against them and of the racketeering activity of which they are accused. Rule 9(b) requires no more than that. *Fondren v. Schmidt*, 626 F.Supp. 892, 898 (D.Nev.1986) (Rule 9(b)'s particularity requirement mandates only that circumstances constituting fraud be identified to extent that defendants will find sufficient information in allegations to prepare an adequate answer); *Riley v. Brazeau*, 612 F.Supp. 674, 678 (D.Or.1985).

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

Plaintiff alleges that defendants violated section 1962(c), Title 18, United States Code. That section provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C.S. § 1962(c) (1979). To state a claim under this section, the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed. 2d 346 (1985). RICO is not restricted to actions against "mobsters" and "organized crime," but is intended to reach both "legitimate" and "illegitimate" enterprises. *Id.* 105 S.Ct. at 3287. *And see United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

### Standing

Mesling argues that plaintiff has not established an "injury to business or property" based upon the alleged predicatory crime, and that any damages plaintiff may have suffered were solely the result of his own actions, since the note was unenforceable. This argument essentially challenges plaintiff's standing to sue defendants under the RICO provisions.

Section 1964(c) provides that any person injured in his business or property by reason of a violation of section 1962 may sue for his damages in federal district court and recover treble damages plus costs and reasonable attorney's fees. 18 U.S.C.S. § 1964(c) (1979).

Controversy had arisen among the various circuit courts over whether plaintiffs had to show damages resulting directly from the violation of section 1962, that is, a "racketeering injury," or whether showing damages resulting from violation of a predicate act (i.e., mail fraud) was sufficient. The Supreme Court addressed that issue in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

In *Sedima* the Supreme Court reversed the Second Circuit's holding that plaintiff was required to show a "racketeering injury," which the circuit court defined as "an injury 'different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter.'" 105 S.Ct. at 3279 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482, 496 (2d Cir.1984)). The Court found that a plaintiff has standing to recover only to the extent that he has been injured in his business or property by the conduct constituting the RICO violation. The Court stated:

Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of the enterprise. Those acts are, when committed in the circumstances delineated in § 1962(c), "an activity which RICO was designed to deter." Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts.

105 S.Ct. at 3286. The Court then indicated that recoverable damages included any injuries to business or property, including competitive injuries such as injury to business and loss of profits resulting from threats, arson, and assault used to force competitors out of business, or to pay "protection money," or to purchase certain goods or hire certain workers. The direct damages resulting from the predicate acts would also be compensable (i.e., recovery for the cost of a burned building, or personal injury resulting from threats), just as damages for "infiltration injury" to a legitimate business enterprise would be compensable.[4]

 Thus, the key to determining whether the injury is compensable under RICO is whether the injury *resulted from a predicate act.* Where the injury results from the predicate act, all damages flowing therefrom are compensable; where the injury was not caused by a predicate act, no recovery under RICO is allowed.[5]

 In this case, plaintiff alleges that he has paid sums to the Bank for various reasons, including the desire to protect his financial reputation. He alleges that he has been damaged "in person and property" by being forced to pay monies to the Bank pursuant to the Bank's demands, by incurring or paying taxes and other expenses on real property that he was required to accept, and by having to show the debt claimed by the Bank as a liability.

This court finds that plaintiff has sufficiently alleged injury to business or property to establish his standing to sue under section 1964(c), Title 18, United States Code.

*"Enterprise"*

 Mesling argues that plaintiff has failed to adequately allege a RICO "enterprise." Section 1961(4) provides that an 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.S. § 1961(4) (1979). The definition of "enterprise" encompasses both legal entities and illegal associations-in-fact. *Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed. 2d 17 (1983). In *Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1985), the Eighth Circuit stated that proof of an "enterprise" requires proof of facts other than the facts required to prove the predicate acts of racketeering. *Id.* at 1060. "Discrete existence, rather than the legality or illegality of the enterprise's activities or goals, is the test...." *Id.*

In *Bennett,* the present and former residents of a retirement community had sued the retirement community, among others,

---

**4.** 105 S.Ct. at 3286 n. 15 and 3303 (Marshall, J., dissenting). The Court stated:

Such damages include, but are not limited to, the sort of competitive injury for which the dissenters would allow recovery. See *post,* 105 S.Ct. at 3303. Under the dissent's reading of the statute, the harm proximately caused by the forbidden conduct is not compensable, but that ultimately and indirectly flowing therefrom is. We reject this topsy-turvy approach, finding no warrant in the language or the history of the statute for denying recovery thereunder to "the direct victims of the [racketeering] activity," *post,* 105 S.Ct. at 3303, while preserving it for the indirect. Even the court below was not that grudging. It would apparently have allowed recovery for both the direct and the ultimate harm flowing from the defendant's conduct, requiring injury "not *simply* caused by the predicate acts, but *also* by an activity which RICO was designed to deter." 741 F.2d [482] at 496 (emphasis added).

The dissent would also go further than did the Second Circuit in its requirement that the plaintiff have suffered a competitive injury. Again, as the court below stated, Congress "nowhere suggested that actual anti-competitive effect is required for suits under the statute." *Ibid.* The language it chose, allowing recovery to "[a]ny person injured in his business *or property,*" § 1964(c) (emphasis added), applied to this situation, suggests that the statute is not so limited.
*Id.*

**5.** Cf. *Campbell v. A.H. Robins Co.,* 615 F.Supp. 496 (W.D.Wis.1985), where the district court found that plaintiffs could not recover under RICO for personal injuries resulting from use of a Dalkon Shield manufactured by defendant. Although this court disagrees with the *Campbell* court's analysis of *Sedima,* its conclusion is not inconsistent with this court's interpretation of *Sedima's* ruling regarding recoverable RICO damages.

for common law fraud, violation of state law, breach of fiduciary duty, and RICO violations. The court concluded that the retirement community was an "enterprise" for purposes of RICO, indicating that an "enterprise" was particularly likely to be found where the enterprise alleged was a legal entity rather than an "associational enterprise." The court stated: "Legal entities are garden-variety 'enterprises' which generally pose no problem of separateness from the predicate acts." *Id.*

And in *United States v. Bledsoe,* 674 F.2d 647 (8th Cir.1982), the court ruled that an "enterprise" for purposes of RICO must (1) have a common or shared purpose, (2) function as a continuing unit, and (3) have an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity. *Id.* at 664–65.

Plaintiff's complaint alleges that the association of Mesling and the Bank comprised an "enterprise" within the statute, or, alternatively, that the Bank is the enterprise. Plaintiff also alleges that both Mesling and the Bank are "persons" within the meaning of section 1961.[6]

Defendant argues, however, that the Bank cannot be both the "enterprise" and the "person" for purposes of section 1962(c).

This court agrees. Apparently, there is some disagreement among the circuits regarding whether an "enterprise" must exist distinctly from the "person" charged in the RICO offense. *Minnesota Odd Fellows Home Foundation v. Engler & Budd Co.,* 630 F.Supp. 797 n. 14 (D.Minn.1986). The clear weight of authority, however, including that of the Eighth Circuit, is that the "enterprise" must be alleged distinct from the "person." *Bishop v. Corbitt Marine Ways, Inc.,* 802 F.2d 122, 123 (5th Cir.1986); *Bennett v. United States Trust Co. of N.Y.,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Hirsch v. Enright Ref. Co.,* 751 F.2d 628, 633 (3rd Cir.1984); *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago,* 747 F.2d 384, 400

(7th Cir.1984), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984); *United States v. Computer Sciences Corp.,* 689 F.2d 1181 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Bennett v. Berg,* 685 F.2d at 1062 (8th Cir.1982); *Guerrero v. Katzen,* 571 F.Supp. 714, 722 n. 9 (D.D.C.1983); *Yancoski v. E.F. Hutton & Co.,* 581 F.Supp. 88 (E.D.Pa.1983); *Shared Diagnostic Servs., Inc. v. Henningsen,* 602 F.Supp. 428 (E.D.Pa.1984); *Van Schaick v. Church of Scientology of Cal., Inc.,* 535 F.Supp. 1125, 1136 (D.Mass. 1982).

Based on these authorities, the court finds that the Bank must be deemed the "enterprise" and that Mesling must be deemed the "person" for purposes of plaintiff's RICO claim.

If, however, Mesling was acting as the agent of the Bank when he allegedly engaged in racketeering activity, plaintiff's RICO claim must fail. In *Minnesota Odd Fellows,* the district court rejected a RICO claim where the plaintiff had alleged that the "enterprise" was a corporation, and that the "person" was an agent of the corporation. 630 F.Supp. 797 (D.Minn. 1986). The court explained that a corporation could only act through its agent, and the acts of the agent were the acts of the corporation. Therefore, a plaintiff who alleged that the corporation was the "enterprise" and the corporation's agent was the "person employed by or associated with" the enterprise failed to allege a RICO violation, since the parties were legally deemed one and the same. 630 F.Supp. at 800.

It is not clear from the pleadings whether Mesling was acting as the Bank's agent when he allegedly defrauded the bank examiners and plaintiff. Plaintiff argues that Mesling was acting in his own self interest to protect his ownership interest in the Bank, and that Mesling was not acting as the Bank's agent.

---

**6.** Section 1961(3) defines "person" as including "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S. C.S. § 1961(3) (1979).

For purposes of a motion to dismiss, this court is required to accept the plaintiff's well-pleaded statements of fact as true, and to make all reasonable inferences that can be drawn from those facts. Accordingly, this court finds that plaintiff has satisfactorily alleged an "enterprise" (the Bank) and a "person employed by or associated with" the enterprise (Mesling).

*"Pattern" of Racketeering Activity*

■ Mesling also alleges that plaintiff has not satisfactorily alleged a "pattern" of racketeering activity for purposes of RICO.

Section 1961(5) requires that, in order to establish a "pattern of racketeering activity" plaintiff must show at least two acts of racketeering activity, which may include mail fraud or wire fraud as alleged in the complaint, within a ten year period. 18 U.S.C.S. §§ 1961(5), 1961(1) (1979 and Supp. 1986).

In *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the United States Supreme Court indicated that the statute required a showing of at least two acts of racketeering activity, plus a relationship between those acts. The Court stated:

> The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec.

18940 (1970) (statement of Sen. McClellan).... Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). This language may be useful in interpreting other sections of the Act....

105 S.Ct. at 3285 n. 14.

In *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 254–57 (8th Cir.1986), the Eighth Circuit analyzed the Court's opinion in *Sedima*, and concluded that, in order to establish a "pattern" of racketeering activity, the plaintiff was required not only to show a relationship between the various acts, but also continuity.

Superior Oil Company had sued one of its employees for conversion of Superior's liquid petroleum gas. Superior alleged that the employee had conspired with two other persons to commit wire and mail fraud in pursuit of the underlying conversion or theft of gas from Superior's pipeline.

The court found that Superior had satisfied the relationship prong, since it had proved several related acts of mail and wire fraud in furtherance of the conversion. The court ruled, however, that Superior had failed to prove the continuity required by *Sedima*: "The actions of [the defendants] comprised one continuing scheme to convert gas from Superior's pipeline. There was no proof that [they] had ever done these activities in the past and there was no proof that they were engaged in other criminal activities elsewhere." 785 F.2d at 275. Nor had Superior presented adequate proof of a threat of continuing racketeering activities in the future. *Id.*

In *Holmberg v. Morrisette*, 800 F.2d 205 (8th Cir.1986), the Eighth Circuit applied its analysis in *Superior Oil*, finding that the case *sub judice* was legally indistinguishable. Since the plaintiff failed to show that either defendant had engaged in like activi-

ties in the past or that they were engaged in other criminal activities, plaintiff could not establish "continuity" necessary to form a "pattern," and his RICO claim failed.

Both *Superior Oil* and *Holmberg* involved appeals following a full trial. The appellate court had the benefit of a complete record before it, and used that record to determine whether the respective plaintiffs had shown continuity. This court, on the other hand, does not have a complete record before it. Indeed, it is not clear that discovery has proceeded to any remote degree of completion. This court cannot say that plaintiff can show no set of facts establishing that defendants had engaged in this activity in the past, or that defendants were engaged in other criminal activity.

In this case, plaintiff alleges that defendants (1) asked him to execute a promissory note as a favor in order to satisfy bank examiners, (2) told him that his obligations would later be satisfied without personal liability to him, (3) subsequently disregarded these statements and informed him that he was personally liable on the note, (4) made erroneous entries in bank records to corroborate assertion of personal liability. Plaintiff alleges that defendants followed this same "pattern" of conduct with respect to two other individuals: Cuskelly and Renner. This court finds that plaintiff has satisfactorily alleged a "pattern" of racketeering activity.

### Probable Cause Determination

■ This court specifically rejects Mesling's contention that plaintiff is required at the pleading stage to establish probable cause to believe that criminal acts were committed. Mesling cites *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.*, 558 F.Supp. 1042 (D.Ut. 1983) in support of his argument.

In *Bache Halsey*, the District Court for the District of Utah reasoned that "racketeering activity" is established by showing that a party has committed at least two "indictable" acts. In order for a grand jury to return an indictment, it was required to find probable cause that an offense had been committed. Thus, the court concluded, to properly plead an action under the treble damages provision of RICO, a party must allege two acts of 'racketeering' with enough specificity to show there is probable cause the crimes were committed. 558 F.Supp. at 1045. *See also Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 413 (S.D.N.Y.1984) (following *Bache Halsey); and Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667, 682–83 (N.D.Ga.1983) (plaintiff must allege either prior conviction or probable cause with reference to predicate acts).

At least five courts have specifically rejected the *Bache Halsey* court's reasoning. In *Lewis v. Sporck*, 612 F.Supp. 1316 (N.D. Cal.1985), the district court found that the *Bache Halsey* probable cause requirement was without foundation:

> While the elements of proof at trial may include whether or not certain acts are "indictable," notice pleading does not. *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 790 (3rd Cir. 1984). Moreover, the *Bache Halsey* standard wrongly incorporates into the civil context the requirements of criminal accusatory pleadings.

612 F.Supp. at 1324. The district court concluded that the better rule was to apply the general principles of pleading set out in Rules 8 and 9(b), Federal Rules of Civil Procedure.

In *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984), the court of appeals similarly rejected the *Bache Halsey* probable cause rule. The court explained:

> First, a determination of probable cause in the criminal context ordinarily involves some evaluation of the reliability of specific evidence. Even the most specific allegations do not establish probable cause unless they are reliable. We are, to say the least, perplexed as to how a court might undertake such evaluations of reliability in deciding a motion to dismiss under Rule 12.
>
> With respect to *Bache Halsey*'s discussion of grand juries, it should be recalled that a grand jury has significant investi-

gative powers and resources, including a broad subpoena power. Before it decides to indict a person, it has extensive opportunities to discover and evaluate relevant facts. It should be obvious that a civil plaintiff has no similar discovery rights until it files its complaint.... The *Bache Halsey* court argued that such specificity was needed in order to evaluate the merits of a claim and to distinguish between well-founded and frivolous claims. While the court's motives are admirable, its approach seems to us to be impractical. We see no grounds for demanding that a civil RICO plaintiff essentially plead evidence and prove the case in the complaint.

747 F.2d at 404. The court concluded that courts should continue to apply the ordinary rules of pleading to RICO claims. *Id. And see Schnitzer v. Oppenheimer*, 633 F.Supp. 92, 96–97 (D.Or.1985) (RICO plaintiff required to plead facts with sufficient particularity to satisfy Rule 9(b), but probable cause pleading not required); *Lipin Ents., Inc. v. Lee*, 625 F.Supp. 1098, 1100 (N.D.Ill.1985) (court cannot compel plaintiff to plead essentially evidence and prove the case in the complaint); *Tryco Trucking Co. v. Belk Store Servs., Inc.*, 608 F.Supp. 812, 815–16 (D.N.C.1985) (following *Haroco*). See also *Sedima, S.P.R.L. v. Imrex Co.*, 105 S.Ct. at 3282–83, where the Court indicated its doubt that criminal standards applied to civil RICO actions. *Id.* (discussing whether predicate acts needed to be established beyond a reasonable doubt).

This court adopts the reasoning of the above courts, and finds that a civil RICO plaintiff is not required to establish probable cause at the pleading stage.

*Effect on Interstate Commerce*

■ Finally, Mesling argues that plaintiff has not shown that the activities of the enterprise "affected" interstate commerce. Plaintiff alleges that he is not required to establish the "effect" on interstate commerce at this time, but is only required to allege an effect.

Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise engaged in interstate commerce, or whose activities affect interstate commerce, to conduct the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C.S. § 1962(c) (1979). The interstate nexus is satisfied if the enterprise affects interstate commerce through its activities, even if it is the racketeering activity of the enterprise that affect interstate commerce. *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1353 (5th Cir.1985); *United States v. Conn*, 769 F.2d 420, 424 (7th Cir.1985); *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1288 (7th Cir. 1983); *United States v. Bagnariol*, 665 F.2d 877, 893 (9th Cir.1981), *cert. denied*, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982); *United States v. Barton*, 647 F.2d 224, 233–34 (2d Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981). The impact on commerce need only be minimal. *R.A.G.S. Couture, supra; Bunker Ramo, supra; United States v. Dickens*, 695 F.2d 765 (3rd Cir.1982); *United States v. Barton, supra; United States v. Altomare*, 625 F.2d 5, 8 n. 8 (4th Cir.1980); *United States v. Rone*, 598 F.2d 564, 573 (9th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Nerone*, 563 F.2d 836, 854 (7th Cir.1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 801 (1978).

In *Bunker Ramo* the court found that it could not say, at the pleading stage, that the plaintiff could show no set of facts showing that the enterprise affected interstate commerce, especially in light of the "minimal criteria" for finding a nexus. 713 F.2d at 1288. This court similarly cannot say that the plaintiff will be unable to show any facts indicating that the Bank is engaged in interstate commerce, or that its activities affect interstate commerce. This court finds that plaintiff has sufficiently alleged an effect on interstate commerce.

## II. DEFENDANT BANK'S MOTION TO DISMISS

■ Defendant Bank argues that plaintiff cannot make out a claim under the Racketeer Influenced and Corrupt Organization Act [RICO], 18 U.S.C. §§ 1961 *et*

seq., because plaintiff cannot show an "enterprise" that is separate from the "person acting upon" the enterprise, that plaintiff cannot show a "pattern" of racketeering activity, and that plaintiff has insufficiently alleged particular facts regarding any criminal acts committed by the Bank. The Bank argues that since plaintiff cannot establish a claim under RICO, this court is without jurisdiction and should dismiss plaintiff's state claims.

This court has already determined that plaintiff's complaint satisfactorily alleges an "enterprise," and a "pattern" of racketeering activity. This court finds, however, that plaintiff has failed to state a claim against the Bank upon which relief can be granted.

The clear weight of authority appears to be that the RICO "enterprise" cannot be held liable under section 1962(c). *Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28 (1st Cir.1986) (section 1962(c) makes it unlawful for any person to conduct an enterprise through racketeering; "enterprise" is mentioned only as the instrument of the person doing the racketeering); *Haroco v. American Nat'l Bank & Trust Co. of Chicago,* 747 F.2d 384, 401–02 (7th Cir.1984) (corporation-enterprise may be liable under 1962(a) when it receives the benefit of the racketeering activity, but only the "person" is liable under section 1962(c)), *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Shared Diagnostic Servs., Inc. v. Henningsen,* 602 F.Supp. 428, 429 (E.D.Pa. 1984) (only "persons" who conduct affairs of "enterprise" are subject to civil liability under RICO); *Van Schaick v. Church of Scientology of Cal., Inc.,* 535 F.Supp. 1125, 1136 (D.Mass.1982) (it is only person, or one associated with enterprise, not enterprise itself, who can violate provisions of section 1962(c)); *Bulk Oil (USA), Inc. v. Sun Oil Trading Co.,* 584 F.Supp. 36, 38 (S.D.N.Y.1983) (quoting *Van Schaick*); *Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20 (N.D.Ill.1982) (it would distort the statute to permit suit against "enterprise" through which "person" had worked, since "enterprise" itself might have been victim of the racketeering activity).

Nor does case law permit the "enterprise" to be held vicariously liable for the acts of the "person" acting through the enterprise. *Schofield, supra; Haroco,* 747 F.2d at 402 n. 20; *Rush v. Oppenheimer & Co., Inc.,* 628 F.Supp. 1188, 1194–95 (S.D. N.Y.1985) (superimposing vicarious liability doctrine in RICO situation would permit "enterprise" which is conduit for activities to become defendant by way of imputation, in transparent effort to reach deeper pocket); *Northern Trust Bank/O'Hare N.A. v. Inryco.,* 615 F.Supp. 828, 835 (D.Ill.1985) (respondeat superior is clearly insufficient basis for RICO liability); *Parnes v. Heinold Comms., Inc.,* 548 F.Supp. at 23–24 (respondeat superior application, while reasonable to establish ordinary civil liability, would be bizarre as means to warp facts into RICO mold); *Dakis ex rel. Dakis Pension Fund v. Chapman,* 574 F.Supp. 757 (N.D.Cal.1983) (court refused to make "quantum leap" from acts of lower level corporate employee to vicarious corporate liability under civil RICO).

Plaintiff cites *Bernstein v. IDT Corp.,* 582 F.Supp. 1079, 1083 (D.Del.1984), in support of his argument that ordinary agency rules should apply, and that the Bank should be held vicariously liable for Mesling's acts. This court rejects the reasoning of the *Bernstein* court, in light of the analysis of the above cited cases. Application of vicarious liability would impermissibly broaden the scope of the RICO Act to include causes of action having nothing to do with the original intent of Congress.

This court concludes that, since the Bank cannot be held directly or vicariously liable under RICO for Mesling's acts, the plaintiff has failed to state a claim against the Bank upon which relief can be granted, and that dismissal of the Bank as a party defendant is appropriate.

*Plaintiff's State Claims*

Finally, defendants assert that this court should dismiss plaintiff's state RICO claim, fraud counts, and breach of contract action since plaintiff's federal RICO claim fails, and since plaintiff has failed to allege the facts giving rise to his state claims with sufficient particularity.

This court has already determined that plaintiff's federal RICO claim is sufficient, and has spent considerable time discussing the sufficiency of the pleadings under Rule 9(b), Fed.R.Civ.P. This court finds that plaintiff's pleadings are sufficient, and that federal, and accordingly pendent, jurisdiction is present. This court will exercise pendent jurisdiction over plaintiff's state claims.

Based on the foregoing, it is the ORDER of this court

1. THAT DEFENDANT BANK'S MOTION TO DISMISS IS GRANTED. THE CLERK IS DIRECTED TO ENTER JUDGMENT OF DISMISSAL WITH RESPECT TO DEFENDANT FIRST NATIONAL BANK & TRUST OF DICKINSON.

2. THAT DEFENDANT MESLING'S MOTION TO DISMISS IS DENIED.