**Nina S. BROYLES, et al.**

v.

**W. Luther "Bill" WILSON, et al.**

**Civ. A. No. 92–403–B.**

United States District Court,
M.D. Louisiana.

Jan. 26, 1993.

---

Clayton Arthur Larsh Davis, Hunter William Lundy, Lundy & Dwight, Lake Charles, LA, for plaintiffs Nina S. Broyles, Special Delivery Adoption Services, Inc.

James P. Lambert, Curtis, Tilly, Robideaux & Lambert, Lafayette, LA, for defendant W. Luther Wilson.

Vance A. Gibbs, Charles S. McCowan, Jr., Linda G. Rodrigue, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for defendant Richard Tannehill.

John Conway Miller, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA, for defendants Mark McDermott, American Academy of Adoption Attys.

## WRITTEN REASONS FOR RULING ON MOTION TO DISMISS

POLOZOLA, District Judge.

Plaintiffs filed this suit [1] alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) [2], antitrust violations under the Sherman and Clayton Acts,[3] and Louisiana state law. This suit arises from a long standing dispute between two Baton Rouge attorneys, Nina S. Broyles and W. Luther Wilson. It is safe for this Court to conclude that these attorneys do not like each other and have exhibited animosity and ill feelings towards each other for some time.

After the suit was filed, the defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On September 24, 1992, the Court granted defendants' motion to dismiss the federal actions with prejudice and the state law claims without prejudice. The Court withheld entering a final judgment until it could submit written reasons to support its decision. Irrespective of how this suit was styled by the plaintiffs, the Court concludes that this suit is nothing more than a suit for libel and slander under Louisiana law. However damaging the statements made by Wilson may have been to the plaintiffs, they do not support a claim under RICO or the federal antitrust laws. The Court now gives its reasons to support its decision to grant defendants' motion to dismiss.

### I. The Parties

The plaintiffs in this suit are Nina S. Broyles and Special Delivery Adoption Services, Inc. Ms. Broyles is an attorney engaged in the private practice of law in Baton Rouge who, among other things, handles private adoptions. Special Delivery is a Louisiana corporation and adoption agency which was created by Broyles to facilitate work with birth mothers and families who wish to adopt babies.

Named as defendants in the case are W. Luther "Bill" Wilson, a Baton Rouge attorney and Mark McDermott, who is president of the American Academy of Adoption Attorneys. In addition to being an attorney engaged in the private practice of law, Wilson is the director and founder of Cradle Haven Foundation, Inc., a non profit Louisiana corporation which provides financial support for young women who plan to place babies and children up for private adoption.

### II. The Parties' Contentions

Broyles and Wilson apparently have had a long-standing dispute over the acts and practices Broyles allegedly committed when rendering various services to parents

---

**1.** The Court's reference to plaintiffs' suit includes the original and two amended complaints and plaintiffs' responses to two RICO Standing Orders.

**2.** 18 U.S.C. § 1964(c) and (d).

**3.** 15 U.S.C. §§ 1 and 15.

who sought to adopt children. Wilson has allegedly stated that Broyles is a baby broker who sells babies. Broyles contends that Wilson has been engaged in a scheme to defraud Broyles out of the adoption business. Broyles further contends that Wilson has carried out this scheme through an enterprise which involves Cradle Haven or in the alternative, the law firm of Taylor, Porter, Brooks and Phillips, of which Wilson is a partner.[4]

Plaintiffs also allege that the Academy is an association of adoption attorneys which was founded in 1990 for the purpose of establishing a network which refers lawyers who handle private adoptions or the procurement and placement of children through private adoptions or agencies. In February of 1992, the Academy of Adoption Attorneys denied Broyles' application for membership after receiving an unfavorable reference from Wilson.

### III. Standard for a Motion to Dismiss

This matter is before the Court on defendants' motion to dismiss for failure to state a claim upon which relief can be granted. The Court must emphasize that it is only considering the pleadings filed herein in determining whether to grant or deny defendants' motion to dismiss.[5]

For purposes of this Rule 12(b)(6) motion, the Court must accept plaintiffs' allegations in the complaint as true. However, the Court is not required to accept conclusionary allegations which are unsupported by facts in the complaint.

The Court finds that the plaintiffs' claims are based on conclusionary allegations which fail to establish or support the elements necessary to support a RICO or antitrust claim. Even if the plaintiffs' allegations are not considered ·conclusionary, these facts fail to support a RICO or antitrust claim as a matter of law. Each of the plaintiffs' claims will be discussed separately.

### IV. The Antitrust Claims

■ As a general rule, antitrust allegations are liberally construed.[6] To state a claim under the restraint of trade provision of the Sherman Act, the plaintiff must establish the existence of a conspiracy or "combination" affecting interstate commerce that imposes unreasonable restraint of trade.[7] Plaintiffs' factual allegations do not establish these basic elements regarding Wilson, McDermott or the Academy.

■ A review of the pleadings reveal that plaintiffs failed to allege the specific market affected by the defendants' actions. The complaint states that the defendants' actions injured Broyles and restrained her trade. However, the complaint fails to state what trade is restrained. Broyles is an attorney who does legal work involved with adoptions. She does not claim that her practice is restricted to adoption work. According to the complaint, Broyles is an employee of Special Delivery. Special Delivery is strictly involved in private adoptions. Thus, the market for Special Delivery would presumably be the private adoption business. However, it is impossible to tell from the complaint what market is involved and which of the two plaintiffs are affected in that market.

■ Market definition is essential to make out an antitrust claim. In *Gough v.*

4. It must be noted that Broyles' husband is also a partner in the Taylor, Porter, Brooks and Phillips firm.

5. If the Court would consider evidence outside of the pleading, the court would be required to convert the Rule 12(b)(6) motion to dismiss to a motion for summary judgment. See Rule 12(b).

6. *Ancar v. Sara Plasma, Inc.,* 964 F.2d 465 (5th Cir.1992).

7. The statute reads:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by a fine not exceeding $10,000,000 of a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.
15 U.S.C. § 1.

*Rossmoor Corp.*[8], the Ninth Circuit pointed out that

> [i]t is the process of competition with which the act is concerned, and a practice will not fall under its ban unless it displays an adverse impact on that process which is more than trivial. Sullivan, Antitrust, p. 178. Before this study can be commenced, however, we must know with what field of competition we are concerned and the dimensions of that field. Market definition is essential.[9]

Thus, the Court finds that plaintiffs fail to sufficiently allege what market is impacted by the defendants' actions.

The Court further finds that plaintiffs fail to plead facts which show any combination or contract which restrains plaintiffs in either the trade of legal services or private adoptions. It is clear that some kind of joint action is an essential element in an antitrust claim.[10]

The complaint also alleges that Wilson gave Broyles a negative reference to the Academy when the Academy processed her application to become a member. Plaintiffs make the conclusory allegation that because it denied Broyles' application, the Academy joined in Wilson's "conspiracy." However, this allegation is purely conclusionary and no facts are alleged which, if proved, would establish that the Academy or McDermott are part of any conspiracy to restrain trade.

While plaintiff does not need to offer any reason for the alleged conspiracy, she must give some factual allegations that would support such a claim.[11] No facts support the conclusion that McDermott and the Academy conspired with Wilson or with anyone else. The facts set forth in the pleadings merely suggest that the information or misinformation McDermott and the Academy received was innocently passed along to other individuals which had the effect of damaging Broyles' reputation and legal practice. No facts support the allegation that McDermott or the Academy passed the information along for the specific conspiratorial purpose of damaging Broyles. Although the complaint suggests this was the unfortunate result of the Academy's actions, the facts alleged in the complaint failed to support a conspiracy.

■ To satisfy the conspiracy element, the pleadings must contain charges of the defendants' conspiracy and factual allegations that would support such a claim. The damaging result does not thereby create a conspiracy, nor does it bring the Academy and McDermott into an alleged continuing conspiracy when the requisite intent by McDermott and the Academy is lacking.

The facts fail to support the allegation that the Academy combined with its own members to restrain Broyles' "trade." Assuming without deciding that Broyles' trade is that of an attorney, the denial of membership in the Academy does not prevent her from practicing law, nor does it prevent her from doing legal work involved with adoptions. Membership in the Academy is not alleged to be required in order to do legal work or adoptions, and the facts fail to suggest otherwise. While the allegation is made that the Academy is a network of adoption attorneys and makes referrals, there is no factual support for any allegation that the Academy controls the private adoption market in law or fact.

■ It is clear that defamatory comments do not constitute a "combination" which restrains Broyles' trade. While such comments certainly may have the effect of damaging her professional reputation, such conduct is not the type of conduct the antitrust laws were enacted to prohibit or punish. The state has sufficient statutory authority and judicial opinions on defamation and unlawful interference with contracts to handle such behavior, if indeed it exists.

**8.** *Gough v. Rossmoor Corp.,* 585 F.2d 381, 385 (9th Cir.1978).

**9.** *Id.*

**10.** *Consolidated Metal Products Inc. v. American Petroleum Institute,* 846 F.2d 284 (5th Cir.1988).

**11.** *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 961 F.2d 1148, 1159 (5th Cir.1992).

Finally, the damage allegedly caused by the defendants only affected one competitor—Broyles—rather than general competition in either the legal services market or the private adoption market. All of the factual allegations relate to information being passed along or traceable to Wilson. The Academy's denial of her application for membership is allegedly traceable to Wilson's unfavorable recommendation.

The conduct alleged must have an adverse impact on the competitive conditions in general as they exist within the field of commerce in which the plaintiff is engaged.[12] It is fundamental that the antitrust laws are for the protection of competition, not competitors.[13]

In summary, the plaintiffs' antitrust claim is dismissed because plaintiffs fail to sufficiently allege the affected market or a combination in restraint of trade. Furthermore, the allegations only concern restraint of one competitor rather than general competition in a particular market.

### V. The RICO Claim

Plaintiffs claim the defendants' conduct alleged in the complaint violates 18 U.S.C. Section 1964(c) and (d) of the RICO statute.[14] A viable claim under § 1962(c) requires conduct of an enterprise through a pattern of racketeering activity.[15] Plaintiffs claim must be dismissed because plaintiffs fail to plead facts which show a "pattern of racketeering activity."

Plaintiffs allege that Wilson directly organized a scheme through which he and other co-conspirators would systematically deceive and misrepresent to birth mothers, adoptive couples, and the public that Broyles, Special Delivery and "others similarly situated" were engaged in "criminal, immoral and unethical practices."[16] The alleged purpose of this scheme was to maliciously harm the plaintiffs and their clients and to enrich the defendant and his co-conspirators. Plaintiffs allege in the complaint that Wilson "scammed" Special Delivery "and other agencies like it "by depriving them of business and soliciting more business for the non-profit foundation." The complaint also alleges that the "[d]efendant thereby gains additional customers for the enterprise and additional influence and power by the control of the adoption process in the community and sometimes the nation."

### A. The Enterprise Requirement

■ Plaintiff initially alleges that the enterprise consisted of the Academy, Cradle Haven Inc., Saint Elizabeth Foundation Inc., and Gail House Foundation. In the second and superseding RICO standing order,[17] the enterprise is alleged to be Cradle Haven Foundation, or, alternatively, the law firm of Taylor, Porter, Brooks and Phillips (Taylor Porter).

The enterprise is an entity associated for a common purpose of engaging in a course of conduct.[18] The RICO Act encompasses

---

**12.** *Gough v. Rossmoor Corp.,* 585 F.2d 381, 385 (9th Cir.1978).

**13.** *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *Brown Shoe Co. v. U.S.,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962). "Taken as a whole, the legislative history illuminates Congressional concern with the protection of competition, not competitors." *Olympia v. Celotex,* 597 F.Supp. 285 (E.D.La. 1984).

**14.** Title 18 U.S.C. Section 1962 states in part: (c) It shall be unlawful for any person employed by or associated with an enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

**15.** *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Parker & Parsley Petroleum v. Dresser Industries,* 972 F.2d 580 (5th Cir.1992).

**16.** Amended RICO standing order.

**17.** Counsel for plaintiffs conceded at oral argument that the Amended RICO Standing Order superseded the first.

**18.** *U.S. v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

two kinds of enterprises: legal entities and "associations in fact." [19]

■ If the enterprise is an "association in fact" enterprise, the plaintiffs must show evidence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure.[20]

Although counsel for the plaintiffs has conceded that the amended RICO Standing Order supersedes the first, the Court must note that the enterprise alleged in the first complaint fails to show any ongoing structure, formal or informal, functioning over time through a hierarchical or consensual decision-making structure among the members of the enterprise first alleged. Plaintiffs have merely strung these groups together alleging they are "in communication and involved in certain common activities designed for the purpose of facilitating the placement of babies." Plaintiffs fails to allege any facts showing any structure whatsoever.

Where a legal entity is alleged as the RICO enterprise, the entity is likely to be clearly distinct from the acts of racketeering.[21] Plaintiffs claim that the daily activity of the alleged enterprise Cradle Haven Foundation involves routine adoption practices, such as counseling, home studies, and placement. The racketeering activity directly advances Wilson by giving him control and influence in the adoption field. In the alternative plaintiffs claim that the usual and daily activities of the enterprise Taylor, Porter involves the routine practice of law.

The Court finds that neither Cradle Haven nor Taylor, Porter constitute a RICO enterprise under the facts of this case. The acts involving both entities were performed in the course of their regular business. An enterprise is an entity associated for a common purpose of engaging in a course of conduct.[22] Plaintiff does not allege that Cradle Haven or Taylor, Porter existed for the purpose of effectuating Wilson's alleged scheme to defraud her.

It is clear that plaintiffs' pleadings must be liberally construed. For purposes of the Rule 12(b)(6) motion, the Court finds that even if the allegations relating to Cradle Haven or Taylor, Porter sufficiently meet the requirements to state an "enterprise," the complaint fails to meet the requirements of a "pattern of racketeering activity."

**B.  The "Pattern" Requirement**

■ RICO imposes civil liability on those who engage in certain "prohibited activities," which are defined as requiring proof of either "a pattern of racketeering activity" or "collection of an unlawful debt."[23] A pattern of racketeering activity requires at least two predicate acts of racketeering activity which are related and pose a threat of continued criminal activity.[24] "Racketeering activity" means any act indictable under various specified federal statutes, and certain federal offenses.[25]

---

19. *United States v. Turkette*, 452 U.S. 576, 581–82, 101 S.Ct. 2524, 2527–28, 69 L.Ed.2d 246 (1981); *Bennett v. Berg*, 685 F.2d 1053 (8th Cir. 1982).

20. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

21. *Bennett*, 685 F.2d at 1060 (Legal enterprises are "garden variety enterprises" which generally pose no problem of separateness from the predicate acts).

22. *U.S. v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

23. 18 U.S.C. § 1962(c).

24. 18 U.S.C. § 1961(5); *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893,

106 L.Ed.2d 195 (1989); *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 191 (5th Cir.1991).

25. 18 U.S.C. § 1961(1): "racketeering activity" means (A) any act or threat involving murder, kidnaping [sic], gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extor-

**658**

No prior conviction is required for a predicate act, but "[a]s defined in the statute, racketeering activity consists not of acts for which the defendant has been convicted, but for acts which he could be."[26]

 Plaintiff has alleged predicate acts of mail and wire fraud, extortion, interstate transportation in aid of racketeering and bribery of a public official. The alleged predicate acts are either not predicate acts, were not committed in furtherance of a scheme, or were mere conclusory allegations, all of which fail to meet legal standards required to support a RICO claim on a Rule 12(b)(6) motion.

## VI. Conclusion

In summary, the Court finds that plaintiffs' action is essentially a defamation suit. When the factual allegations in the complaint are taken as true as required under Rule 12(b)(6), defamation does not violate RICO or the antitrust laws. The fact that persons may have acted in reliance on information received from Wilson about Broyles does not thereby make them members of a conspiracy. Plaintiffs complaint essentially makes conclusory allegations unsupported by facts which would satisfy the elements of RICO or antitrust law as a matter of law.

Therefore,

IT IS ORDERED that the defendants' motions to dismiss under Rule 12(b)(6) are GRANTED.

IT IS FURTHER ORDERED that the RICO and antitrust claims shall be DISMISSED with prejudice. The state law claims shall be dismissed without prejudice.

tionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations, section 1511 (relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), sections 2314 and 2315 (relating to interstate transportation of stolen property), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), or (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States.

**26.** *Sedima,* 473 U.S. 479, 488, 105 S.Ct. 3275, 3280.